LAND, Justice.
 

 Mrs. Elizabeth P. McEnery; widow of Samuel Douglas McEnery, owned 1,016.52 acres of land in Ouachita parish. On February 6, 1917, she granted an option to the Producers’ Oil Company for a cash consideration of $1,016.52, or $1 per acre, to prospect for oil, gas, and sulphur on the property. In the year 1918 the Producers’ Oil Company transferred this contract to the Texas Company.
 

 On May 14, 1920, the Texas Company completed on the property a gas well, which produced gas in paying quantities.
 

 Some time prior to December 1, 1920, Mrs. McEnery had sold 243.81 acres of this land, and thereafter on December 1, 1920, she and the Texas Company entered into an amended or supplemental agreement in which, it was agreed that the lease was then in full force and effect, and that a minimum royalty, on the land then owned by Mrs. McEnery, of $1,341.93, should be fixed, and should continue as long as the lease was in force and effect.
 

 Mrs. McEnery then died. One of her three surviving children sold his one-third interest in the leased property to plaintiff, the Sam George Fur Company. A conventional partition was made between that company and the other two heirs of Mrs. McEnery, plaintiff receiving as its one-third of the estate of decedent 251.55 acres, leaving approximately a like number of acres to each of the other two heirs, and 243.81 acres to decedent’s vendees.
 

 The other two heirs of Mrs. McEnery, being satisfied with the lease as amended, were made parties defendant in the present suit by plaintiff, which asks that the lease be annulled as to its 251.55 acres, which include the land on which the Texas Company’s gas well is located, and a part of the other land leased.
 

 On April 24, 1926, the Texas Company assigned to the defendant Southern Carbon Company the producing gas well with the •lease on the 10 acres around it, and the defendant Arkansas-Louisiana Pipeline Company, on December 31, 1928, acquired the remainder of the Texas Company’s lease from the Arkansas Natural Gas Company, assignee of same through mesne assignments from the original lessee.
 

 
 *287
 
 1. Plaintiff’s main attack upon the lease is that it has expired by its own limitations.
 

 In the contract from Mrs. McEnery to the Producers’ Oil Company of date February 6, 1917, it is stipulated that: “If operations for the drilling of an oil or gas well are not begun on said land on or before the 5th day of January A. D. 1918, this lease shall terminate as to both parties, unless the Lessee on or before that date shall pay or tender to the Lessor, or deposit to the credit of the Less01. * * * the sum .of * * * $1,524.-78, which payment or tender may be made by the check or draft of the Lessee, and, however made, shall operate to confer on the Lessee the privilege of deferring the time limit for one year from, said date.
 

 “Thereafter in like manner and upon like payment or tender of said amount the time limit may be further deferred for an additional period of one year, provided always that this lease cannot be kept in force by such payments in the absence of drilling operations for a longer period than three years from January 5, 1917.” Tr. 23.
 

 “If the Lessee shall sink a well or shaft and discover oil, gas or sulphur in paying quantities in or under the above described land, then this lease shall remain in full force and effect for ten years from such discovery, and as much longer as oil, gas or sulphur shall be produced therefrom in paying quantities.” Tr. 24, 25.
 

 The above contract was amended by Mrs. McEnery and the Texas Company, assignee of the Producers’ Oil Company, on December 1, 1920, only to the extent of payment of the minimum sum of $1,341.93 in lieu of all royalties due for each year upon oil, gas, or other minerals; and also to the extent of exacting a waiver and relinquishment by Mrs. McEnery of her right and claim to require additional development of the leased land. It was agreed that the sums paid in lieu of yearly royalties should be accepted by Mrs. McEnery in full satisfaction for further development by the Texas Company. Tr. 29.
 

 It is also stipulated in the above amended lease that: “However, nothing herein contained shall obligate The Texas Company to continue the payment of said sum should it surrender or abandon said lease as a whole, or as to all except each producing well with ten acres held thereby under the terms of the lease, but it shall pay under this agreement for the full year period in which such abandonment or surrender is made.” Tr. 30.
 

 The above amended lease between Mrs. McEnery and the Texas Company, of date December 1, 1920, expressly declares that: “Except as herein amended, the said lease of. date February 6,1917, is hereby readopted, ratified, confirmed and acknowledged to be in full force and effect.” Tr. 30, 31.
 

 It is evident, therefore, that the term of the original contract, of date February 6, 1917, was not affected by the subsequent amended agreement between the parties.
 

 Plaintiff contends that the lease expired by its own terms on May 14, 1930, ten years after the discovery of gas, May 14, 1920, and filed the present suit to annul the lease on November 28,1930.
 

 
 *289
 
 The record shows clearly that the defendant Southern Carbon Company acquired from the Texas Company the discovery well, and the 10 acres around it, and that this company has continued to operate the well down to the date of the institution of the present suit.
 

 It is further shown by the record that the defendant Arkansas-Louisiana Pipeline Company has drilled upon the rest of the property five gas wells producing gas in paying quantities, and that this company was still operating these wells when this suit was filed.
 

 In other words, defendant companies were still producing gas in paying quantities when plaintiff brought the present suit to annul the lease.
 

 It is expressly stipulated in the original contract that: “If the Lessee shall sink a well or shaft and discover oil, gas or sulphur in paying quantities in or under the above described land, then this lease shall remain in full force and effect for ten years from such discovery and as much longer as oil, gas ox sulphur shall be produced therefrom in paying quantities.”
 

 Such a lease is by no means a lease in perpetuity, as the main consideration of the lease is the development of the land, and it is a matter of common knowledge that oil and gas fields cease to produce in paying quantities after the lapse of a certain number of years.
 

 The lease in perpetuity reprobated by the law is the mere holding by the lessee, indefinitely, of an option to exploit the property, without production of any kind, since the lessee must either develop with reasonable diligence or give up the lease.
 

 2. The original contract contains the following stipulation: “But nothing in this paragraph contained shall obligate the Lessee against its wishes or option to make any such payments or to drill, or otherwise carry on operations hereunder.”
 

 The lease, as amended, also provides that: “However, nothing herein contained shall obligate The Texas Company to continue the payment of said sum should it surrender or abandon said lease as a whole, or as to all except each producing well with ten acres held thereby under the terms of the lease, but it shall pay under this agreement for the full year period in which'such abandonment or surrender is made.”
 

 Plaintiff contends, in the alternative, that those are potestative conditions, and that the contract of lease is therefore null and void.
 

 . It is true that these conditions are clearly potestative as they make the execution of the contract of lease depend upon the will of the lessee, thereby destroying the 'obligation which the lessee had assumed. Rev. Civ. Code, art. 2024.
 

 However, while the lease in this case was without effect so long as it remained with the lessee to execute or withdraw from it, a different condition arose when the lessee and .its assigns actually discharged the obligation, which, but for the potestative condition, would have been imposed upon the lessee, and plaintiff accepted and profited by the advantage resulting therefrom. Caddo Oil & Mining Co. v. Producers’ Oil Co., 134 La. 701, 711, 64 So. 684; Anse La Butte Oil
 
 *291
 
 & Mineral Co. v. Babb, 122 La. 415, 47 So. 754; Busch-Everett Co. v. Vivian Oil Company, 128 La. 886, 887, 55 So. 564.
 

 Six gas wells have been drilled under this lease, and lieu royalties have been paid yearly, not only up to the date of the filing of this suit, November 28, 1980, but plaintiff has received royalty since the suit was filed. Tr. 60.
 

 Plaintiff cannot, while retaining such advantage, be permitted to repudiate the obligations assumed thereby.
 

 3. Plaintiff finally contends that the contract of lease is without consideration on the part of the lessee, in that nothing was given or paid for it, and it did not bind itself to give or pay anything for the rights granted subsequent to December 1, 1920, other than at its choice or option.
 

 Mrs. McEnery, the lessor, was paid by the Producers’ Oil Company a cash bonus of $1,-016.52, or $1 per acre, when the contract was made with the Producers’ Oil Company, February 6, 1917. As the land was then located in “wildcat” or undeveloped territory, the consideration was ample, as the contract is an option for three years within which to drill a well. It imposes no potestative condition by reason of its failure to impose upon the lessee any obligation to drill, since it is not within the contemplation of the contract that the lessee should drill, unless it so elects. The purpose is to confer the right to drill without imposing the obligation, and there is nothing in that purpose or in the nature of the contract which contravenes any law of this state. Saunders v. Busch-Everett Co., 138 La. 1049, 1050, 1051, 71 So. 153.
 

 In addition to the cash bonus of $1,016.-52, the contract provides for the payment of $1,524.78 for each year, not to exceed three years, for the extension of the time limit to drill. This sum was paid each year up to the drilling of the gas well by the Texas Company May 14, 1920, and since that date by amended lease of date December 1, 1920, a lieu royalty of $1,341.93 has been paid annually. It is expressly stated and agreed to in the amended lease that the sum paid to Mrs. McEnery contemporaneously with the execution of the amended lease, to wit, the sum of $1,141.93 (being the sum of $1,341.-93 less the sum of $200 theretofore paid as gas royalty), “shall be full consideration for any and all rights and privileges herein granted unto The Texas Company and in full satisfaction and liquidation of any and all demands of the said Mrs. Elizabeth P. McEnery against The Texas Company prior tOj as well as for, the year beginning December 1, 1920.” Tr. 29.
 

 A lessor unquestionably has the right to stipulate for and accept a fixed yearly royalty in lieu of a royalty based upon a fluctuating production. This was done in the present case, and the yearly royalty has been paid and received in this case, without protest, for a number of years. It is now too late for plaintiff to repudiate the contract, after silent acquiescence in same for the last ten years, and to plead that it contains a potestative condition as to the lessee’s obligations, after the contract has been executed and the plaintiff has benefited thereby.
 

 It may be added that plaintiff also claims the sum of $8,569.62 from the Southern Carbon Company for 190,436,000 cubic feet of gas
 
 *293
 
 produced since May 14, 1930, the date on which plaintiff contends that all rights of defendants to produce gas from the lands of petitioner expired; and, in connection with his alternative demand for the annullment of the lease, plaintiff claims that, since his acquisition of the lands, the Southern Carbon Company has produced and used or sold from the gas well 931,125,000 cubic feet of gas, worth $41,900.62, for which plaintiff demands judgment in the alternative.
 

 The demands of plaintiff were rejected at its costs in the lower court. In our opinion, the judgment appealed from is correct.
 

 Judgment affirmed.