ODOM, Justice.
 

 Plaintiffs brought suit against the defendant to recover $2,100, the value of 14 rent notes, each for the sum of $150, which notes it is alleged the defendant had illegally converted to his own use.
 

 Defendant filed exception of no cause and no right of action, which was sustained, and the suit dismissed. Plaintiffs have appealed.
 

 The basis of the exception is that plaintiffs’ petition does not show that they ever owned the notes alleged to have been converted by defendant, and therefore have no cause or right to demand the notes or their proceeds.
 

 Plaintiffs are the widow and two children (one of whom is a minor represented by his mother as natural tutrix) of Charles A. Coyle, deceased. It is shown by the petition that Charles A. Coyle owned at the time of his death certain commercial property on Magazine street in the city of New Orleans; that the property belonged to the community which existed between the said Coyle and his wife; and that after the death of Coyle his widow was recognized by judgment rendered on August 3, 1932, as the owner of an undivided one half interest therein, and his two children as the owners of the other half. The petition also shows that at the time Charles A. Coyle acquired the property he took it subject to a recorded
 
 *311
 
 lease contract executed by D. A. Palmisano, a former owner thereof, in favor of Charles Handelman, which lease contract was dated April 1, 1926, and ran for a period of 126 months from its date. It therefore expired on September 30, 1936. The consideration for the lease was $150 per month, the monthly payments being represented by 126 negotiable notes.
 

 At the time Charles A. Coyle acquired the property it was encumbered by two mortgages, one for $20,000 in favor of the Conservative Homestead Association, which is referred to as the first mortgage, and one for $9,000, which is referred to as the second mortgage. It is alleged that the $9,000, mortgage note “had been assigned and endorsed over to A. D. Geoghegan,” the defendant in the present suit, and that the rent notes above described were pledged “to A. D. Geoghegan as additional security for the payment of the note identified with the second mortgage.” It does not appear from the petition when or by whom the 14 rent notes involved in this suit were pledged to Geoghegan as additional security for the payment of the $9,000 second mortgage note. But the petition shows that the pledge was made prior to the date on which these plaintiffs acquired the property, and that the rent notes never went into their hands.
 

 As we , have said, these plaintiffs were recognized as owners and sent into possession of the property by judgment on August 3, 1932. The petition shows that they accepted the property subject to the recorded lease contract and subject to the two mortgages .above described. Plaintiffs alleged that they were unable to pay the mortgages, and on February 24, 1934, transferred the property by dation en paiement to the Conservative Homestead Association, the holder of the first mortgage. In order that the homestead association might acquire unencumbered title to the property, Geoghegan, this defendant, who owned the second mortgage note and who held the rent notes in pledge, authorized the cancellation of his mortgage. This was done by the recorder of mortgages. It is further alleged that, prior to the date on which plaintiffs transferred the property to the homestead association, an agreement was entered into by and between the association and the defendant, Geoghegan, that he was to purchase the property from the association, which agreement was carried out; and that the $9,000 mortgage note held by the defendant, to which the rent notes were attached as collateral, was marked “Paid” and “accordingly the pledge of the rent notes was thereby terminated.”
 

 Paragraph XII of the petition reads as follows:
 

 “That your petitioners were the owners of the said Magazine street property for a period of fourteen months, having acquired said property from the Succession of C. A. Coyle, and having retained title to said property until the Act of Sale Referred to in Article XI.”
 

 The sale referred to in article XI of the petition is the dation en paiement made by plaintiffs to the Conservative Homestead Association. It is further alleged that the defendant, Geoghegan, retained the rent notes after the note to which
 
 *313
 
 they were attached as collateral was marked “Paid.” Plaintiffs averred that they received no rent on the property for the period of 14 months during which they owned- it; that they had made a demand on the defendant to deliver to them the 14 rent notes which fell due during the period of their ownership, which demand was refused. They further alleged that the defendant, by illegally converting the said 14 notes to his own use, had damaged them to the extent of their value, which was $2,100, and prayed that they have judgment against him for that amount.
 

 The original petition contains 21 paragraphs, some of which were amended by a supplemental petition.
 

 After a careful reading of both the original and supplemental petitions our conclusion is that the judgment sustaining the exception of no cause and no .right of action is correct.
 

 If plaintiffs were never the owners of the 14 rent notes, they have no cause of action against the defendant to recover the .value of them. That is conceded by their counsel. But he argues that the petition shows that plaintiffs owned them. The petition does not say so. In fact, the petition' as a whole negatives the theory of their ownership. They alleged that the lease ran for a period of 126 months and that they owned the property during 14 months of that period. So their only pretense that they owned the 14 rent notes involved is that they owned the leased property for 14 months during the period of the lease.
 

 Counsel’s theory is set out in his brief on page 4. We quote what he says:
 

 “Counsel submits that the petition as supplemented does disclose a cause of action. It fully sets out appellants’ ownership of the property and their ensuing right to the rent and/or rent notes; it fully sets out that the said notes were wrongfully converted by the defendant.
 

 “The purchaser of immovable property in a conventional sale is entitled to the rents accruing on the property from the date of purchase and to any rent note that may have been given to represent such rents.”
 

 It is true that the fruits of an immovable belong primarily to the owner of the property. But the owner of the property may by contract grant to another the enjoyment of the property during a certain time for a certain stipulated price. He may let out or lease it. C.C. art. 2674. A lease is a contract by which the owner of a thing grants to another the enjoyment of it at a fixed price. C.C. art. 2669. The lease is a real obligation which accompanies the property leased “in the hands of the person who acquires it.” C.C. art. 2015. Real obligations may be created in three ways, one of which is “By alienating to one person the immovable property, and to another, some real right to be exercised upon it.” C.C. art. 2012.
 

 A recorded lease is an encumbrance, a burden upon the property that follows it into the hands of a purchaser. A vendee who takes real property by transfer pending a recorded lease takes
 
 *315
 
 it subject to the encumbrance and has no right to use it until the lease expires. This is because the right to the use of the property has been alienated prior to his acquisition.
 

 The vendee is, however, ordinarily entitled to the proceeds of the lease, because in the absence of a stipulation in the deed to the contrary the sale of a thing includes the lease. This is the principle relied on by counsel for plaintiffs. But it has no application here, because plaintiffs’ petition affirmatively shows (1) that the lease contract made by a former owner of the property was recorded in the conveyance records, and (2) that they knew when they acquired the property that the notes representing the monthly rentals to accrue subsequent to the date of their acquisition had already been disposed of by a former owner of the property. The petition shows that at the time plaintiffs acquired the property the rent notes involved in this suit were pledged to Geoghegan, the defendant, as security for the second mortgage note of $9,000.
 

 The owner of property who leases it for a long period of years has primarily the right to collect the rents, to receive the fruits of the property during the entire period of the léase. He may, however, under the law, dispose of his right to collect the rents. He may transfer that right to another by negotiating the notes which represent the rentals. When, this is done the holder of the notes, and not the owner of the property, has the right to collect the rentals as they mature; and, if a subsequent purchaser of the leased property acquires it with knowledge that the former owner who leased it has already disposed of his right to collect the rentals, such subsequent purchaser acquires no right to the rentals. He acquires only such right as his vendor had. He acquires only what in a sense may be termed the naked ownership of the property during the term of the lease.
 

 The plaintiffs owned the property subject to the lease for only 14 months. They knew when they acquired it that the rent notes had already been pledged. The petition shows that they knew that the property was subject not only to the lease but to the two mortgages above described, and that Geoghegan, the defendant, held one of the mortgage notes, to which the rent notes that fell due during their period of ownership were already pledged. They could 'not have acquired any right to collect rents during their period of ownership without the consent of Geoghegan, the defendant, who held the notes in pledge. During that period the defendant was entitled to the rents, and the reason the monthly rental installments were not collected during that time was that Handelman, the lessee, had instituted suit against the owners of the property to collect damages caused by the bad condition of the roof of the building, and refused to pay the rent, but deposited the amount in the registry of the court, which amount -the court subsequently permitted hint to withdraw. Presumably Handelman, the lessee, has already paid or is willing to pay the rent notes involved. According to the petition Geoghegan, the defendant, would have been entitled to the proceeds of these notes if
 
 *317
 
 they had been paid as they matured, and the fact that they were not paid at maturity does not deprive Geoghegan, to whom the notes were pledged, of their proceeds.
 

 Counsel for plaintiffs argues that, inasmuch as Geoghegan agreed to and did cancel his secohd mortgage on the property at the time the plaintiffs made the dation en paiement to the Homestead Association, the pledge of the rent notes “expired.” There is no merit to this argument. The petition does not show, and there is nothing from which it may be inferred, that Geoghegan’s $9,000 mortgage note was in fact paid by these plaintiffs or by any one else. It is true that Geoghegan purchased the property from the Conservative Homestead Association, but the petition does not show nor can it be inferred that he ever agreed to deliver these rent notes or their proceeds to plaintiffs. The petition shows beyond question that the defendant, who held the 14 rent notes which fell due during the period of the plaintiffs’ ownership of the leased property, had a right to collect them and to credit the proceeds on his $9,000 mortgage note.
 

 Counsel for plaintiffs cite and rely on the case of Lesseigne et al. v. Cedar Grove Realty Co., 150 La. 641, 91 So. 136. That case has no application here, because the facts are entirely different. In that case the plaintiff purchased from the defendant a plantation on January 26, 1920, which plantation was subject to a lease for the following year for a consideration of $2,850, the amount being represented by a nonnegotiable promissory note. After purchasing the property plaintiff sued for possession of the note. The defense was that the note had been intentionally withheld from the sale. The court held that under the terms of the transfer the purchaser was entitled, not only to the property itself, but to the rent note, which was nonnegotiable, and there was no evidence that the note had been transferred by the defendant, the former owner of the property. The holding was based on the principle that the owner of the property is entitled to its fruits.
 

 There was some contention in that case that parol testimony should have been, admitted to show the intent of the parties on the particular point whether the rent note was included in the sale of the land. The court held that the deed itself made full proof of the intent of the parties.
 

 For the reasons assigned, the judgment appealed from is affirmed, with all costs.