UNITED GAS PUBLIC SERVICE CO. v. BARRETT et al.

No. 5561.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1938.

Rehearing Denied Jan. 28, 1938.

Writ of Certiorari and Review Denied March 7, 1938.

Foster, Hall, Barrett & Smith, of Shreveport, for appellants.

Wilkinson, Lewis & Wilkinson and Cook, Cook & Egan, all of Shreveport, for appellee.

DREW, Judge.

J. Alex Wall, Clarence W. Wall, and J. Dennis Wall are the fee owners of the S. W.¼ of N. E.¼, and W.½ of S. E.¼ and S. E.¼ of S. W.¼, Sec. 33, Tp. 23 N., R. 16 W., Caddo parish, La. They leased said land to be mined for oil and gas to D. L. Perkins on December 5, 1928. By assignment the oil and gas lease subsequently became the property of the United Gas Public Service Company on February 24, 1931, which lessee drilled and brought in a producing well located in the N. W.¼ of the S. E.¼ of said tract. On April 19, 1932, the Walls entered into a contract with the law firm of Foster, Hall, Barrett & Smith, composed of Pike Hall, H. B. Barrett, and M. K. Smith, whereby the law firm agreed to prosecute a suit for and in the behalf of the Walls against the United Gas Public Service Company for an accounting for gas, gasoline, and other minerals taken or to be taken by the gas company or its assigns from the above-described property. In consideration for this service, the Walls agreed to pay to the law firm ½ of all amounts paid to them (the Walls) by the United Gas Public Service Company, or its assigns, for the gas or gasoline taken from the above-described property in excess of 4 cents per thousand cubic feet for gas, and in excess of 2 cents per gallon for gasoline. The law firm agreed to pay all costs of the litigation. This contract was recorded in the conveyance records of Caddo parish on the following day, April 20, 1932.

On November 1, 1933, C. H. McEachern acquired by mineral deed from J. Dennis Wall a ¹⁄₃₂ of the oil, gas, and other minerals in and under and that may be produced from the above-described land. This mineral deed was filed and recorded in the conveyance records of Caddo parish on November 9, 1933.

On January 9, 1934, T. C. Adams acquired a like mineral interest of ¹⁄₁₆ of the oil and gas and other minerals in and under and that may be produced from the S. W.¼ of the N. E.¼ and N. W.¼ of the S. E.¼, Sec. 33, Tp. 23 N., R. 16 W., Caddo parish, La. This mineral deed was recorded January 10, 1934.

On February 9, 1934, the law firm, having completed the litigation they contracted to handle for the Walls, entered into another contract with them, the pertinent part of same being as follows:

"That whereas on April 19, 1932, parties of the first part entered into a written agreement, employing parties of the second part to institute and prosecute a suit for and in their behalf against the United Gas Public Service Company for an accounting for the gas, gasoline — taken or to be taken by the United Gas Public Service Company or its assigns from the following described property owned by parties of the first part, to-wit: SW¼ of NE¼; W½ of SE¼ and SE¼ of SW of Section 33, Township 23 North, Range 16 West, Caddo Parish, Louisiana, and whereas in said agreement parties of the first part agreed that in consideration for the legal services rendered and to be rendered by parties of the second part in said suit, parties of the second part should be paid one-half of all amounts in excess of four cents per thousand cubic feet paid for the gas, and in excess of two cents per gallon paid for the gasoline taken or produced from the SW¼ of NW¼ and NW¼ of SE¼ of Section 33, Township 23 North, Range 16 West, Caddo Parish, Louisiana, and whereas parties of the second part have complied with their agreement and have instituted and prosecuted a suit against the United Gas Public Service Company, being No. 59,244 on the docket of the First Judicial District Court, Caddo Parish, Louisiana, and No. 32,542 on the docket of the Supreme Court of the State of Louisiana, entitled J. Alex Wall et als v. United Gas Public Service

Company, and have paid all the costs incurred in connection with said suit;

"Now Therefore, in order to confirm said agreement of date April 19, 1932, and in order to comply with the intents and purposes of the parties in connection with said agreement, parties of the first part do by these presents acknowledge full compliance by parties of the second part, their attorneys, of their obligations under said agreement and in consideration therefor parties of the first part in ratification and confirmation of said agreement of April 19, 1932, and in order to carry out the intents and purposes thereof, hereby transfer and deliver to parties of the second part, one-half of the gross sales price of the gas and gasoline taken from the SW¼ of NE¼ and the NW¼ of SE¼ of Section 33, Township 23 North, Range 16 West, Caddo Parish, Louisiana, in excess of four cents per thousand cubic feet for the gas, and in excess of two cents per gallon for gasoline.

"Parties of the first part declare that this agreement shall be authority to any purchaser or purchasers of gas and gasoline to make payments in accordance herewith.

"This agreement shall be binding upon the parties hereto, their heirs and assigns forever."

This contract was recorded in the conveyance records of Caddo parish, La., on February 10, 1934.

On February 20, 1934, Clarence W. Wall transferred to Bussa Company, Inc., and O. J. Rowe, in proportions of ⅘ to the Bussa Company and ⅕ to Rowe, a ³⁄₃₂ of the oil, gas, and other minerals in and under and that may be produced from the S. W.¼ of the N. E.¼ and N. W.¼ of the S. E.¼, Sec. 33, Tp. 23 N., R. 16 W., Caddo parish, La. This was recorded in the conveyance records of Caddo parish, on the same day.

On March 30, 1935, W. H. Welch acquired from J. Dennis Wall a ²²⁄₈₀₀ of the oil, gas, and other minerals in and under and that may be produced from the S. W.¼ of the N. E.¼ and N. W.¼ of S. E.¼, Sec. 33, Tp. 23 N., R. 16 W., Caddo parish, La., the deed being recorded in the conveyance records of Caddo parish, La., on the same day.

By transfer from T. C. Adams to M. J. Grogan and from M. J. Grogan to the Bussa Company, Inc., of date August 22, 1934, the Bussa Company became the owners of ¹⁄₂₀ of the oil, gas, and other minerals in and under and that may be taken from the entire 160 acres, above described. The Bussa Company's deed was recorded in the conveyance records of Caddo parish, La., on August 22, 1934.

On March 24, 1937, the United Gas Public Service Company instituted this proceeding, wherein it alleged it was the owner of the lease on the lands above described and had a producing gas well thereon. It set up the contract of Foster, Hall, Barrett & Smith with the Walls and the different mineral interests above set out, and alleged:

"10. Petitioner shows that there is a dispute between H. B. Barrett, Pike Hall and M. K. Smith, who compose the law firm of Foster, Hall, Barrett & Smith, and the parties who have acquired mineral interests from J. D. Wall, C. W. Wall and J. A. Wall, as hereinabove set forth, namely, Bussa Company, Inc., C. H. McEachern, O. J. Rowe and W. H. Welch, as to whether or not H. B. Barrett, Pike Hall and M. K. Smith are entitled to receive under the terms of the contracts hereinabove mentioned, one-half of all amounts due Bussa Company, Inc., O. J. Rowe, C. H. McEachern and W. H. Welch for natural gas produced from said property in excess of four cents per M. C. F. and for gasoline extracted from said natural gas in excess of two cents per gallon, on account of the fact that the said Bussa Company, Inc., O. J. Rowe, C. H. McEachern and W. H. Welch are contending that the mineral interests acquired by them are not subject to and burdened with the provisions of the contract entered into by and between J. D. Wall, C. W. Wall and J. A. Wall, and the law firm of Foster, Hall, Barrett & Smith.

"11. Petitioner shows that by virtue of the matters hereinabove set forth, the ownership of ¹⁷²⁄₈₀₀ of the royalties due under the terms of the above mentioned oil and gas lease is now in dispute to the extent of one-half of the amount of said royalties due for natural gas in excess of four cents per M. C. F. and one-half of the amounts due for gasoline extracted from said gas in excess of two cents per gallon, and petitioner shows that the name and domicile of each of the above named claimants are as follows:

| | |
|---|---|
| H. B. Barrett... | Caddo Parish, Louisiana. |
| Pike Hall... | Caddo Parish, Louisiana. |
| M. K. Smith... | " " " |
| Bussa Company, Inc.... | " " " |
| O. J. Rowe... | " " " |
| C. H. McEachern... | " " " |
| W. H. Welch... | " " " |

"12. Petitioner further shows that it has attempted to effect an amicable agreement between the above named parties, in order that the royalty interests above mentioned by be safely paid to the rightful owners, but that said parties have failed or refused to agree as to their rights, insofar as the royalty interests hereinabove referred to are concerned.

"13. Petitioner further shows that it desires to comply with its obligations under the oil, gas and mineral lease, hereinabove referred to, but cannot safely do so, except by this interpleader.

"14. Petitioner shows that it has filed for record in the Mortgage Records of Caddo Parish, Louisiana, a notice of lis pendens against the parties named in this suit, in order to fully protect its rights under the oil and gas lease which it owns.

"15. Petitioner shows that the price paid to royalty owners for natural gas produced under the above mentioned lease is the sum of four cents per M. C. F. and, consequently, the dispute between the parties, as hereinabove set forth, does not at this time affect the payments of royalty on natural gas. Petitioner further shows, however, that the price paid for gasoline extracted from natural gas produced from said property varies from time to time and at various times the price paid for said gasoline has exceeded the sum of two cents per gallon, and that there has accrued in its hands the following amounts due to the credit of the mineral interests of the following named parties on account of the controversy hereinabove set forth:

| To the Credit of the Mineral Interest Owned by | Amount |
|---|---|
| Bussa Company, Inc.... | $350.45 |
| O. J. Rowe... | 88.24 |
| C. H. McEachern... | 103.76 |
| W. H. Welch... | 37.50 |
| Total | $579.75 |

"16. Petitioner further shows that there will hereafter accrue from month to month until the controversy, hereinabove mentioned, has been finally decided, royalties to the credit of the interests claimed by the above mentioned parties, as heretofore set forth, and that the royalties accrued and those that will continue to accrue from time to time should be deposited in the Registry of this honorable court, and that your petitioner be authorized to deposit such royalties as have accrued and that will accrue from time to time to the credit of the interests claimed by the parties, as hereinabove set forth, until the matters in controversy have been finally adjudicated."

It prayed for the parties named therein to be cited to appear and make such claims to the money as they desire; that it be granted the right to deposit in the registry of the court the sum of $579.75, being the amount of royalties accrued to the credit of the interests thereinabove referred to, and for the right to make further deposits as the royalty funds accrue.

All the parties interpleaded answered, Foster, Hall, Barrett & Smith claiming they were entitled to all the money in the registry of the court, which is ½ of the amount due for gasoline in excess of 2 cents per gallon, under their recorded contracts with the Walls. The other parties, all owners of mineral rights under the deeds above set forth, claimed they are entitled to all of the money in the proportions of their mineral interests and deny that the contracts between the Walls and the law firm are binding upon them or upon their interests in the property.

On the above enumerated documents, all of which were filed in evidence, the case was tried below, resulting in a judgment rejecting the demands of Foster, Hall, Barrett & Smith, and ordering the funds to be distributed to the mineral holders in the proportions as shown by their mineral deeds. The law firm prosecutes this appeal.

The lower court rendered a written opinion in the case and, in disposing of the rights of the law firm under its first contract with the Walls, of date April 19, 1932, said:

"As to the original agreement, it is clear that it conveys no interest in the land nor in the lease. It is not an assignment of any particular fund, but an agreement to pay a fee in cash, the amount of which is determined by the payments received by the lessor. It is not to be paid until the sums are 'paid to them by the United Gas Public Service Company'. It is simply an agreement between the lessors and their attorneys to pay a fee out of monies that they hope to receive over and above a certain amount."

■ The lower court was eminently correct in this finding. It therefore follows that this contract could have no effect or in any way be binding on subsequent mineral purchasers whose mineral sales were

recorded prior to the date of the second contract between the law firm and the Walls.

C. H. McEachern and T. C. Adams had acquired from the Walls a 1/32 and a 1/16 interest, respectively, which could not in any manner be affected by a contract made subsequent thereto. At a later date, Adams transferred his 1/16 mineral to M. J. Grogan and O. J. Rowe, in the proportions of 4/5 to Grogan and 1/5 to Rowe, and Grogan transferred his 4/5 of 1/16, which is 1/20, to the Bussa Company, Inc. Therefore, it is certain that Rowe's 1/80 mineral interest, Bussa Company, Inc.'s, 1/20 mineral interest, and McEachern's 1/3 mineral interest, could not be and are not affected by the second contract between the Walls and the law firm.

That leaves the only interest that could possibly be affected, the 3/32 interest in the minerals acquired by the Bussa Company, Inc., and O. J. Rowe, in the proportions of 4/5 to the Bussa Company, Inc., and 1/5 to Rowe, and the 22/800 mineral interest owned by W. H. Welch, these having been acquired after the recordation of the second contract between the law firm and the Walls. The only serious question in the case is whether or not a second contract between the law firm and the Walls, which was duly recorded in the conveyance records of Caddo parish, La., is binding on the owners of minerals acquired subsequent to the recordation of the contract.

 The consideration stated in the lease granted by the Walls is that the lessee shall pay to them 1/8 of the value of the gas, which includes gasoline, based upon the market price whenever the gas is syphoned or sold off the premises. Therefore, we see that the royalty or rent to be received by the lessor was not 1/8 of the gas at the well, but they were to be paid in money 1/8 of the market price; regardless of how it was to be paid, it was royalty or rent. It is well settled that the paying of a royalty under a mineral lease is the paying of rent. Spence v. Lucas, 138 La. 763, 70 So. 796; Logan v. State Gravel Company, 158 La. 105, 103 So. 526; Board of of Commissioners of Caddo Levee District v. Pure Oil Company, 167 La. 801, 120 So. 373; Roberson v. Pioneer Gas Company, 173 La. 313, 137 So. 46, 82 A.L.R. 1264.

In Gulf Refining Company v. Glassell, 186 La. 190, 171 So. 846, 849, the court said:

"The lessee in the usual mineral and oil lease based upon a cash or royalty consideration, or both, merely obtains an obligatory or personal right but not a real right— a jus in re. Therefore he is in the same position as an ordinary lessee of realty and is not entitled to institute a petitory action in his own right."

In the case of Coyle v. Geoghegan, 187 La. 308, 174 So. 366, 368, a case dealing with a lease of realty, the Supreme Court said:

"It is true that the fruits of an immovable belong primarily to the owner of the property. But the owner of the property may by contract grant to another the enjoyment of the property during a certain time for a certain stipulated price. He may let out or lease it. C.C. art. 2674. A lease is a contract by which the owner of a thing grants to another the enjoyment of it at a fixed price. C.C. art. 2669. The lease is a real obligation which accompanies the property leased 'in the hands of the person who acquires it.' C.C. art. 2015. Real obligations may be created in three ways, one of which is 'by alienating to one person the immovable property, and to another, some real right to be exercised upon it.' C.C. art. 2012.

"A recorded lease is an encumbrance, a burden upon the property that follows it into the hands of a purchaser. A vendee who takes real property by transfer pending a recorded lease takes it subject to the encumbrance and has no right to use it until the lease expires. This is because the right to the use of the property has been alienated prior to his acquisition.

"The vendee is, however, ordinarily entitled to the proceeds of the lease, because in the absence of a stipulation in the deed to the contrary the sale of a thing includes the lease. This is the principle relied upon by counsel for plaintiffs. But it has no application here, because plaintiffs' petition affirmatively shows (1) that the lease contract made by a former owner of the property was recorded in the conveyance records, and (2) that they knew when they acquired the property that the notes representing the monthly rentals to accrue subsequent to the date of their acquisition had already been disposed of by a former owner of the property. The petition shows that at the time plaintiffs acquired the property the rent notes involved in this suit were pledged to Geoghegan, the defendant, as security for the second mortgage note of $9,000.

"The owner of the property who leases it for a long period of years has primarily the

right to collect the rents, to receive the fruits of the property during the entire period of the lease. He may, however, under the law, dispose of his right to collect the rents. He may transfer that right to another by negotiating the notes which represent the rentals. When this is done the holder of the notes, and not the owner of the property, has the right to collect the rentals as they mature; and if a subsequent purchaser of the leased property acquires it with knowledge that the former owner who leased it has already disposed of his right to collect the rentals, such subsequent purchaser acquires no right to the rentals. He acquires only such right as his vendor had. He acquires only what in a sense may be termed the naked ownership of the property during the term of the lease."

It is to be noted that the court in this last case said, "the lease is a real obligation which accompanies the property leased 'in the hands of the person who acquires it.' C.C. art. 2015." It also held that if the owner transfers his right to the rents to another, the transferee and not the owner has the right to collect the rents.

In Gulf Refining Company v. Glassell, supra, the court held that a mineral sale creates a real right. It is therefore clear to us that if the Walls had transferred ownership in this property to another, and had prior thereto transferred their right to collect the rents, which knowledge the transferee had prior to the transfer, the transferee or vendee would only acquire the naked ownership of the property as long as the lease was in effect.

Article 2017 of the Revised Civil Code so provides:

"A rent charge, created by way of condition to the alienation of the property, has been hereinbefore explained. But a rent charge may be created and imposed on particular property, independent of any alienation of it, for the security or extinguishment of a debt; and it may be perpetual or temporary, and, in either case, forms a real obligation which passes with the land."

■ We know of no law to prevent the transfer or assignment of a portion of the rents to become due, as the law firm contends was done in this case. The contract between the Walls and the law firm in plain language transfers to the law firm a portion of the rents to become due. Its unequivocal language is, "hereby transfer and deliver to parties of the second part (law firm) one-half of the gross sale price of the gas and gasoline. * * *" The rent originally fixed between the lessors (Walls) and the lessee was ⅛ of the sale or market price. The transfer was clearly of a portion of the rents and authorized any purchaser of the gas or gasoline produced from the land, to pay that portion of the rents so transferred to the law firm.

If the rent agreed upon as a consideration in the original lease had been ⅛ of the oil and gas produced from the well, a different contract would have been necessary to convey a portion of the rents to become due to the law firm. However, it is immaterial that the rent was to be paid in money and not in gas and gasoline, as it is immaterial whether farm lands be rented for money consideration or a part of the crop to be raised.

As long as the lease from the Walls to the lessee existed, the Walls had nothing to dispose of except their ⅛ royalty or rent and when they transferred a portion of the mineral rights to the other defendants herein, they acquired nothing more than a part of the royalty or rent during the existence of the lease. However, after the expiration of the lease, their mineral rights would amount to something different. However, they would at that time be no longer interested in the rents to be paid by the present lessee, whose lease would have been nonexistent and the rights of the law firm, of course, extant.

■ In article 2017 of the Revised Civil Code, a rent charge imposed upon real estate forms a real obligation which passes with the land.

■ The transfer of a portion of the rents to become due by the lessee to the law firm was a rent charge imposed upon an immovable property, and when it was recorded in the conveyance records of Caddo parish, it was notice to the public and affected third persons, and any purchaser of mineral rights in and under the land affected thereby subsequent thereto, took them subject to the recorded contract of transfer.

We therefore conclude that the judgment of the lower court is erroneous and will have to be amended, and to do so we will have to redraft it.

It is now ordered, adjudged, and decreed that C. H. McEachern's ⅟₃₂ mineral right, O. J. Rowe's ⅟₈₀ mineral right, and the Bussa Company, Inc.'s, ⅟₂₀ mineral right are

not affected in any way by the contract between the Walls and Foster, Hall, Barrett & Smith, and they are entitled to be paid out of the funds deposited in the registry of the court before Foster, Hall, Barrett & Smith are paid. It is further ordered and decreed that the remainder of the funds be paid to said law firm.

It is further ordered and decreed that all other claims of Bussa Company, Inc., O. J. Rowe, and W. H. Welch are hereby rejected.

It is further ordered and decreed that all subsequent deposits and rentals accruing be paid to the respective parties in the same proportions.

It is further ordered and decreed that the costs of this suit be paid by W. H. Welch, Bussa Company, Inc., and O. J. Rowe, in proportion to the amount of each one's claim, which was rejected.