## STRINGFELLOW v. MURPHY.
### No. 6016.

Court of Appeal of Louisiana.
Second Circuit.

March 6, 1940.

Rehearing Denied April 4, 1940.

Writ of Certiorari and Review Denied
April 29, 1940.

Chandler & Chandler, of Shreveport, for appellant.

Foster, Hall & Smith, of Shreveport, for appellee.

DREW, Judge.

On February 23, 1938, T. Levert Stringfellow conveyed to defendant, Mrs. Eleanor Leslie Murphy, 100 acres of land in Caddo Parish, Louisiana, for a consideration of $753 cash, and the assumption by the vendee of a Federal Land Bank mortgage having a balance due of $1,778.81. On September 28, 1938, this suit was filed by Stringfellow against Mrs. Murphy for a rescission of the sale on account of lesion beyond moiety.

The lower court fixed the value of the property at $5,500, which was more than twice the amount of the consideration paid. Defendant elected not to supplement the price, but to allow the sale to be rescinded upon reimbursement to her of the purchase money, with interest.

A written stipulation or agreement was made and signed by plaintiff and defendant and filed in court, in which stipulation all differences were agreed upon and settled, except one. It is set out in the said agreement as follows: "On July 16, 1938, the defendant, Mrs. Eleanor L. Murphy, executed an oil, gas and mineral lease covering and affecting said property to the Arkansas Fuel Oil Company, as recorded in Conveyance Book 394, page 329, of the Records of Caddo Parish, Louisiana, and received therefor the sum of $1000.00 as a cash bonus, the said sum of $1000.00 having been paid to Mrs. Murphy, the defendant. The said lease is made a part of this agreement by reference, and is for a term of 10 years providing for the payment of rentals for renewal of said lease from year to year on July 16th of each year. The plaintiff in this case contends that he is entitled to receive that proportion of the $1000.00 lease bonus which the period of time from September 28, 1938, up to July 16, 1939, bears to the entire term of the lease, and the defendant contends that the entire lease bonus, namely, the sum of $1000.00, should belong to her. The question submitted to the Court by this agreement is the ownership of said lease bonus of $1000.00, that is, whether the entire amount belongs to defendant or whether a proportion, and if so what proportion, belongs to the plaintiff. It is further agreed between the parties that since the sum of $1000.00 was applied on the mortgage due the Federal Land Bank of New Orleans, that whatever portion of the lease bonus may be decreed to belong to defendant shall bear 5% per annum interest from July 22, 1938 (the date of the payment to the Land Bank), until paid."

In passing on this question, the lower court, in a well-written opinion, said:

"Plaintiff sold to defendant the land in controversy on February 23, 1938. Defendant sold an oil, gas and mineral lease on the land to the Arkansas Fuel Oil Company on July 16, 1938, the lessee paying therefor the sum of $1,000 in cash; the lease is for a period of ten years and provides for the payment of $100 on the 16th day of July each year, beginning with the year 1939, for yearly renewals of the lease, and also provides for the usual royalties in the event oil or gas is produced from the premises. Plaintiff's suit was filed September 28, 1938.

"Plaintiff contends that he is entitled to receive from defendant, on the return of the property, a part of the $1,000 in proportion to which the period of time from September 28, 1938, to July 16, 1939, bears to one year, the time for which the $1,000 was paid. Defendant, on the other hand, contends that she is entitled to the whole $1,000.

"It is now conceded by the parties that the property will return to plaintiff burdened by the oil and gas lease aforesaid,

and it is the contention of plaintiff that the $1,000 paid for said oil and gas lease is 'rental' or a 'civil fruit', and that, in law, it accrues from day to day, under Article 547 of the Civil Code, and, consequently, plaintiff is entitled to the rents and civil fruits accruing from the land from the date of his demand for cancellation of the sale. We have heretofore in oral opinion held contrary to plaintiff's position and the matter is now before us on application for a rehearing.

"If the $1,000 bonus paid for an oil and gas lease for the initial term of one year is 'rent' or a 'civil fruit' accruing from day to day, we would have no hesitancy in agreeing with plaintiff's contention. Civil Code, Article 547. But, is the bonus or cash payment for an oil and gas lease 'rent' or a 'civil fruit' accruing day by day to the owner of the land?

"Oil and gas leases have never been definitely classified by law or the jurisprudence in Louisiana. For the purpose of applying the law of prescription, mineral rights or mineral reservations have been decreed as servitudes. Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. [756] 758 [91 So. 207]. The Legislature, by Act 205 of 1938, has declared that oil and gas leases are defined and classified as real rights and incorporeal immovables; royalty due under an oil and gas lease is held to be 'rent' and an action therefor is prescribed in three years. Board of Levee Commissioners v. Pure Oil Company, 167 La. 801 [120 So. 373].

"No case has been cited which deals with the subject of the initial cash consideration or bonus paid for an oil and gas lease, that is, whether it is 'rent' paid for one year in advance, or whether it is the consideration for an 'option' granted to the lessee. When the lease is executed, the lessee pays the cash consideration and he then has an 'option' during the year to use the land for the exploration and production of oil, and if he is successful in the production of oil, he thereafter pays a royalty, which is rent.

"In an oil and gas lease, time is the essence of the contract, and if the cash consideration is not paid, the lease is void. Likewise, if the annual rental is not paid at the time specified, the lease is forfeited and the lessor has his right of action to cancel same; but we know of no law which would authorize the lessor to sue the lessee for the annual rental and to recover a daily accrual of rental until the lease is cancelled and, if this be true, we do not see how that the cash consideration for an oil and gas lease, or the annual rental stipulated, can be said to be accruing from day to day. The payment is due not from day to day, but it is all due at one and the same time, and if not paid, the lease is forfeited, and if paid, the lessee secures certain rights for the period of time stipulated in the lease. This right then is an obligation against the land so that one who acquires the property subject to the encumbrance thereon, and this, we think, is especially true when considered with respect to an action for lesion.

"'The seller who demands the rescission on account of lesion beyond moiety, must resume the possession of the thing, in the state in which it is. * * *' Civil Code, Article 2597.

"'If the purchaser elect to rescind the sale, he must restore the property with all the profits received, or which he might have received from the property from the time of bringing suit * * *.' Civil Code, Article 1878.

"In an ordinary land lease, the consideration may or may not be paid at the beginning of the term so that there may be rent which the purchaser could receive, but did not, after the filing of the suit, for which the purchaser would be bound to account; but in an oil and gas lease there is no consideration (with respect to the annual payments) that the purchaser in a lesion suit could receive after the filing of the suit, except the succeeding annual rental payment. If that one had become due and had been paid to defendant herein, since the filing of the suit, she would have to account for same.

"It is conceded that had defendant sold a part of the property or had mortgaged it, plaintiff would not have the right to question the sale or to receive the proceeds of the mortgage, but would be required to take the property in the state it is in at the moment of filing the suit.

"Plaintiff has cited three cases in support of his contention. The first, Summers & Brannins v. Clark, 30 La.Ann. 436, held that as between a seizing creditor and a lessee, under an unrecorded lease, the lessee was liable to the seizing creditor for rent from the date of seizure, notwithstanding that the lessee had executed negotiable notes and delivered same to the lessor, under the theory that the advance payment

of rent while binding on the lessor, is not binding on his creditors.

"The second case, Coyle v. Geoghegan [187 La. 308], 174 So. 366, was a case where the purchasers acquired property subject to a recorded lease and where rent notes had been given. The purchasers kept the property for fourteen months and then sued the holder of the notes for fourteen months' rent as for the rent accruing to the owners during the period of their ownership, and their claim was denied for the reasons: 1. That the lease contract was recorded; and 2. That they knew the rent notes had been transferred to a third person by the payee.

"The third case, Lesseigne v. Cedar Grove Realty Company, 150 La. 641 [91 So. 136], reveals that the property had been leased for a number of years for which non-negotiable notes had been given. Plaintiff purchased the property in January, 1920, and sued defendant for the rent note due March 1, 1921, it being for rent for the year 1920, and the court held that since rents accrue from day to day, plaintiff was entitled to the rent note for the year beginning with the date of his purchase.

"The underlying principle in all of these cases is that where a vendor sells property, without a stipulation to the contrary, the sale of the land carries with it the rights to the rents, if the vendor has the right to the rents, but where the vendor (who took rent notes and had sold them) has no longer the right to collect the rent and the purchaser has knowledge of this fact, the purchaser buys only the naked ownership, that is, takes the property subject to the recorded lease. The cited cases refer to contracts of sale and are not applicable here for the reason that there is no sale from defendant to plaintiff; the latter takes the property from defendant and he must resume the possession of it in the state it is in, for the defendant here, after making the lease, is no longer the owner of the right to drill for oil or gas, as that right has been sold under the lease.

"All of these cases might be appropriate if we hold that the cash bonus of an oil or gas lease is 'rental' for a year, instead of the purchase of an 'option' to purchase the property within a year at a stipulated amount and, having received $1,000 for the option and which amount was not to be credited on the purchase price, plaintiff here would have to take the property sub-ject to the option without the right to claim a part of the option money.

"Our reasoning herein is partly based on the fact that while the action of lesion is permitted by law, it should not operate to the disadvantage of the purchaser (while it may not in this particular case) who in good faith makes a good purchase and may immediately thereafter receive a handsome bonus for an oil and gas lease (say a paid-up lease for five years), and about the fourth year an oil well is discovered on the premises and the plaintiff then sues to recover the property and is successful, we think that the purchaser is entitled to all of the fruits that were due and payable previous to the demand by the plaintiff.

"It is also conceded that if the defendant had sold the whole or a part of the minerals, plaintiff would have to take the property back subject to the 'mineral sale', and we are of the opinion that the law is such that where a purchaser has sold 'an option' to drill a tract of land for oil, the consideration therefor belongs to such purchaser as 'accruing' at the time of the granting of the lease, before the demand for rescission has been filed.

"For the reasons assigned, the application for rehearing is overruled, and plaintiff will be entitled to resume the possession of the land in controversy subject to the payment to defendant of the sums agreed upon in the stipulation signed by the parties, with the exception of the $1,000 lease money which is decreed to be the property of the defendant.

"Robert J. O'Neal,
"District Judge."

That part of the judgment pertaining to the $1,000 item reads as follows: "It is further ordered, adjudged and decreed that the defendant, Mrs. Eleanor Leslie Murphy, is decreed to be the owner of the lease bonus of $1000.00 and said sum having been applied by the defendant to reduce the mortgage on the property herein shall remain as a first lien and judicial mortgage against said property until paid."

It is from this judgment that the plaintiff has perfected his appeal. Defendant has answered the appeal praying that the judgment be amended by allowing legal interest on the $1,000 from July 23, 1938, until paid, as is provided for in the stipulation of agreement. This answer to the

appeal was filed October 12, 1939. On January 9, 1940, defendant, appellee, filed a motion to dismiss the appeal on the ground that the controversy has become a moot question, due to the fact that the lease has been dropped by the lessee and a release executed by it to the lessor.

■ We are of the opinion that when appellee answered the appeal and prayed for the judgment to be amended in her favor, she waived her right to insist on the appeal being dismissed; however, we are also of the opinion there is no merit to the motion. The contest here is not over any future renewals that might be paid under the terms of the lease, but is over the money paid for the original option. The motion to dismiss is therefore overruled.

We are also of the opinion that the reasoning and conclusions of the lower court are correct and there is little if anything to be added to what it has said.

Counsel for appellee has cited us to six cases which, to our minds, support the finding of the lower court,—

"In the case of Easterling v. Murphey, 11 S.W.2d 329 [334], the Texas Court of Civil Appeals held that the rightful owner of land upon establishing his title could not recover a cash bonus received by one in possession who had executed a mineral lease, for the reason that the money was not rent or royalty for oil or gas produced from the land, but a consideration paid under contract, the court declaring: 'The $6350 paid to appellees was not rents, in the usual meaning of such term. It was not the proceeds of minerals or anything else taken out of or off of said land * * *. It accrued to the appellees and arose wholly out of a contract between appellees and Reynolds and Pettit, and said contract in no way resulted in any waste or injury to the land. With this contract appellants had no connection. It was never their contract, and they never at any time ratified it. The money was received by the appellees on the contract and not out of the land, and was, as to the lessees, money paid out and not money received from the land. If there ever was any mineral under said land, it is still there.'

"In the case of Geller v. Smith [130 Cal.App. 485], 20 P.2d 102 [104], the California Court of Appeals said: 'My opinion is that the term "bonus" as applied to an oil and gas lease has come to have a definite, meaning, to-wit: a sum of money paid by a lessee to the lessor in consideration for the execution of a lease, as distinguished from the return or royalty reserved by the lessor to be paid by the lessee through the term of the lease.'"

The following Louisiana cases hold that the bonus money paid at the time of executing the lease contract is paid for the right or option to drill during a stipulated period of time: Sam George Fur Company v. Arkansas-Louisiana Pipeline Company et al., 177 La. 284, 148 So. 51; Leonard v. Busch-Everett Company, 139 La. 1099, 72 So. 749; Saunders v. Busch-Everett Company, 138 La. 1049, 71 So. 153; Fomby v. Columbia County Development Company, 155 La. 705, 99 So. 537.

The lower court undoubtedly overlooked the agreement as to interest on the $1,000, as is set out in the stipulation and, regardless of the stipulation to that effect, it is legally due. There is no contest here on that point.

It therefore follows that the judgment of the lower court is amended by awarding to defendant, appellee, interest at the rate of five per centum per annum on the $1,000 from July 22, 1938 (the date it was paid to the Federal Land Bank) until paid; and in all other respects, the judgment is affirmed, with the costs of this court to be paid by appellant.