O’NIELL, Chief Justice
 

 (dissenting).
 

 There are four paragraphs in the contract of lease which leave no doubt in my mind that the' intention of the' parties was that 25 years should be the maximum term of the lease. The paragraphs which I refer to are the fourth, fifth, eighth, and eleventh paragraph. There is not in the contract any provision that casts a doubt upon the plain statement in each of the four paragraphs which I have mentioned, that the lease should continue in full force and effect for the period of 25 years from its date unless it should become null at an earlier date b.y the failure of the lessee to comply with the conditions of the contract.
 

 The seventh paragraph, which is relied upon by the appellee, is qualified -by the concluding words “but always and ever subject to the conditions and covenants set forth in this lease”, and is therefore not contradictory of the statement in the four other paragraphs that the period of 25 years is the maximum and not the primary term of the lease. I quote now the fourth, fifth, eighth and eleventh paragraphs of the lease and italicize the words which, in my opinion, leave no doubt that.
 
 *964
 
 the period of 25 years was' the maximum and not merely the primary term of the lease, — viz.:
 

 “Fourth:
 
 This lease is to continue in full force and effect for a period of Twenty-five (25) years from its date unless it becomes null and void at an earlier date by virtue of the failure of the ‘Second Party’,
 
 his associates, assigns, or sub-lessees to comply with and fulfill any of the conditions herein entered into, or -otherwise, it being distinctly understood and agreed that a failure, default, or any violation of any of the conditions of this lease, either in letter
 
 or in spirit
 
 by the ‘Second Party’, his associates, assigns, or sub-lessees, shall render this entire lease null and void, and of no further force or effect as against the said party.
 

 “Fifth: The ‘Second Party’
 
 hereby binds and obligates himself,
 
 his assigns, associates, and sub-lessees
 
 to commence actual and bona fide operations
 
 on said leased premises
 
 within twelve months from the date of this lease,
 
 by erecting a derrick and actually begin to sink a well or wells for prospecting purposes, and to prosecute said operation
 
 diligently and continuously by drilling and so on, until a stratum
 
 of oil, gas, or sulphur, or some other mineral deposit, is found and developed in marketable quantities (but making reasonable allowances for unavoidable and unforeseen accidents which the ‘Second Party’ cannot control), or until such depth is reached as to satisfy the operators that no such deposits can be found under the land at the point at which the operation is going on.
 
 A failure to comply with this clause in good faith shall render this lease null and void and of no further force or effect. ■
 

 “The ‘Second Party’ shall have the right to make as many attempts to find oil or gas on said premises as he may please and thinks proper, provided that such attempts shall be successive in the sense that
 
 until oil or gas be found
 
 not njore than six months shall elapsé between the cessation or abandonment of work on one well and the beginning of work on another; provided further, that if a period longer than six months shall occur or elapse-without
 
 any operation
 
 as aforesaid, then, and in such event, this lease shall become immediately null, void, and of no further force or effect;
 
 and provided also that no further attempts or operations shall be conducted or attempted after the maximum period of twenty-five (25) years from this date.’’
 

 “Eighth: In the event that this lease shall become liable to forfeiture in accordance with the provisions of clause fifth above, it may be renewed and continued, at the option of the ‘Second Party’ his associates, assigns, or sub-lessees, by a payment to the ‘First Party’, its successors, or assigns, on or before the date of the forfeiture thereof, of one ($1.00) Dollar per acre in cash; and a like sum per acre thereafter every year, payable in advance,
 
 *966
 
 as long as the ‘Second Party’ desires to hold the lease in force,
 
 but not exceeding the life of this lease which is twenty-five (25) years from its date.
 

 “A failure to make the payment provided for in this clause every year after the first payment, shall render this lease null, void and of no further force and effect; provided, however, that
 
 if operations as indicated in Clause Fifth shall
 
 be commenced, prosecuted, and continued, in such case the lease shall live; but the
 
 provisions of this clause shall not be afterwards available.”
 

 “Eleventh: The ‘Second Party’ agrees and binds himself, his associates, assigns and sub-lessees that in the event of the forfeiture of this lease from any cause, whether enumerated and set forth herein or not, and whether by default or
 
 final limitation,
 
 he will immediately execute and sign a relinquishment and reconveyance of all the rights and privileges herein granted, to the ‘First Party’ its successors,- or assigns, for the purpose of the cancellation of the same, and to free the land from all encumbrance on the records on account of this lease.”
 

 I quote' now from the contract the seventh paragraph, which is relied upon by the appellees to sustain their contention that the term of 25 years was only the primary term of the lease; and I italicize the words which in my mind are the controlling words in this paragraph, thus, “but always and ever subject to the conditions and covenants set forth in this lease”. That qualification in the seventh paragraph of the lease was not necessary for any other purpose then to reserve the limitation of 25 years which was so sedulously reserved in the other paragraphs of the lease:-
 

 “Seventh: It is expressly agreed and covenanted that if oil, gas, sulphur, or-other minerals be found in paying quantities, through the efforts of the ‘Second Party’, and in compliance with the conditions of this lease, then the ‘Second Party shall immediately become vested with an estate in and to all such minerals underlying the said land with the exclusive right to produce the same, as long as any of the said minerals shall be produced in paying quantities,
 
 but always and ever subject to the conditions and covenants 'set forth in this lease.”
 

 I do not remember of ever reading an oil and gas lease having a primary term as long as 25 years. On this subject the attorneys for the appellant quote from Dr. Harriet S. Daggett’s Work on Mineral Rights, sec. 29, p. 97, where the author cites an article in the' Michigan Law Review by James A. Veasey on The Law of Oil and Gas, thus:
 

 “Term of lease. — Mr. James A. Veasey in a series of interesting articles has discussed the evolution of the commercial oil lease and has stated that a definite or fixed term for a lease characterized the practice from the beginning of the industry until
 
 *968
 
 about 1880; an approximate ten-year period following showed a transition from the early to the modern type. Speaking
 
 as of 1920,
 
 Mr. Veásey says the industry has from experience and basic considerations of: cost of production and other economic factors evolved the following habendum clause: ‘To have and to hold said premises for the purposes aforesaid to and unto the lessee, its successors and assigns, for the term of five years from date hereof
 
 and as much longer thereafter as oil and gas shall be produced therefrom in paying quantities.’
 
 [Italics are mine.]
 

 "Louisiana in her evolution of standard forms followed almost the same line of development,. naturally.” Mich.L.Rev. 18: 445, 652, 749, at 773, April, May, June 1920; Mich.L.Rev. 19: ■ 161, 163, Dec. 1920; The Habendum Clause, Mich.L.Rev. 19: 161, Dec. 1920.
 

 If fhe parties to the lease in contest in this case had intended that the seventh paragraph should be construed as the appellee construes it they would have ended that paragraph with some such expression as was used in the lease in contest in the case of Lieber v. Ouachita Natural Gas & Oil Co., 153 La. 160, 95 So. 538, 541, from which I quote, thus: “In case the parties of the second part should bore and discover either oil or gas, then in that event this grant, incumbrance 'or conveyance, shall be in full force and effect for twenty-five years from the time of the discovery of said product, and as much longer as oil or gas may be produced in paying quantities thereon.”
 

 Another example of the way in which the seventh paragraph of the lease in contest would have ended if the parties had intended that the lease should be construed as the appellant contends,, is found in the lease which was in contest in. the case of Sam George Fur Co. v. Arkansas-Louisiana Pipeline Co., 177 La. 284, 148 So. 51, 52, thus: "If the Lessee shall sink a well or shaft and discover oil, gas or sulphur in paying quantities in or under the above described land, then this lease shall remain in full force and effect for ten years from such discovery and as much longer as oil, gas or sulphur shall be produced therefrom in paying quantities.”
 

 It such a clause as I have quoted from the lease that was in contest in Lieber v. Ouachita Natural Gas & Oil Co., or such a clause as I have quoted from the lease that was in contest in Sam George Fur Co. v. Arkansas-Louisiana Pipeline Co., had been contained in the lease in contest in this case, without the qualifying phrase “but always and ever subject to the conditions and covenants set forth in this lease”, the clause would have been contradictory of the provisions of the fourth, fifth, eighth and eleventh paragraphs of the lease in contest in this case.