## UNITED CENTRAL OIL CORPORATION v. HELM. *

(Circuit Court of Appeals, Fifth Circuit. February 24, 1926.)

No. 4562.

1. **Mines and minerals** ⊙⟿74—Under contract assigning oil lease for half cash and balance from oil produced, assignee making payments until abandonment of well was not liable for balance, unless negligent in plugging well.

Under contract assigning oil lease for half cash and balance from first half of oil produced or proceeds thereof, assignee making payments in good faith until well was abandoned was not liable for balance, unless negligent in plugging well.

2. **Mines and minerals** ⊙⟿74—Well producing $500 worth of oil per month at operating cost of over $600 per month was not producing in paying quantities, so as to require assignee of lease to be paid for from oil and proceeds thereof, to continue operating.

Well producing not over $500 worth of oil per month at operating cost of over $600 per month, including depreciation and overhead charges, was not producing oil in paying quantities, so as to require assignee of lease, under contract requiring part payment from oil produced and proceeds thereof, to continue operating.

*Certiorari denied 46 S. Ct. 638, 70 L. Ed. —.

**3. Mines and minerals ⟸74—Evidence held to show that assignee of oil lease was not negligent in method of operating well abandoned for insufficient production.**

Testimony *held* to show that assignee of oil lease was not negligent in method of operating well, abandoned as not sufficiently productive before payment to assignor of balance payable from oil produced and proceeds thereof, and that no more oil could be produced by any standard method.

**4. Trial ⟸139(1)—It is duty of judge to direct verdict, when it is clear that, if jury rendered verdict for other party, he would be obliged to grant new trial.**

Whenever it is clear that, if jury rendered verdict for one party, judge would be obliged to grant new trial, in exercise of sound discretion, it is his duty to direct verdict for the other party.

In Error to the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Action by T. A. Helm against the United Central Oil Corporation. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

H. F. Montgomery, of Houston, Tex., and L. P. Bryant, Jr., and R. M. Rowland, both of Fort Worth, Tex., for plaintiff in error.

Paul Carrington, of Dallas, Tex. (Etheridge, McCormick & Bromberg, of Dallas, Tex., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. This is a writ of error sued out to reverse a judgment awarding $15,256.96 as damages for breach of an oil-drilling contract. Error is assigned to the refusal to direct a verdict for defendant at the close of the case. Other errors assigned need not be considered. The parties will be referred to as they appeared in the District Court. There is no dispute as to the material facts, which are these:

Defendant in error, plaintiff below, was the holder by assignment of a lease of about 40 acres of land in Eastland county, Tex. Briefly stated, the lease granted the exclusive right to the lessee to exploit the land, drilling and operating thereon, for gas, oil, and other minerals, together with the rights incidental thereto, for a period of four years, but without any obligation on the lessee to begin operations at any time, or in fact to drill a well at all. The lease provided that, if oil, gas, or other minerals were found in paying quantities, the lessor was to have a royalty of one-eighth therein.

The lease had about two years to run, and plaintiff assigned it to the White Oil Corporation, which was thereafter succeeded by the plaintiff in error, defendant below. The contract between plaintiff and defendant referred to the lease, and defendant agreed to pay plaintiff $60,280.25 for same, one-half cash and the balance "out of the first one-half of all the oil or gas produced and saved from said lease, or the proceeds thereof, saving and excepting the one-eighth royalty reserved to the owner of the fee in the original lease." This contract further provided that the defendant should commence the drilling of a well within 37 days from date thereof (June 4, 1920), and drill the same with due diligence to completion. In the event of default in the drilling, the cash payment of $30,140.42 was to be retained as liquidated damages and the lease reassigned to plaintiff.

In accordance with the contracts, defendant drilled a well on the property within the time specified, carrying it down some 3,300 feet, but it proved to be a dry hole. After that another well was drilled to a depth of about 3,800 feet, and this well produced oil. In August, 1924, the production of this well had fallen to about 7 or 8 barrels a day, valued at $2 per barrel. On August 8th it was plugged and abandoned. Plaintiff received the cash consideration stipulated, and received payment for his share of all the oil produced from the well.

[1] It is the contention of plaintiff that a proper construction of the contract is that, oil in paying quantities having been found, the obligation to pay him the full balance of $30,142.42, expressed in the contract, became absolute and payable at all events. To support this he relies mainly on the case of Empire Gas & Fuel Co. v. Pendar (Tex. Civ. App.) 244 S. W. 184. The principle announced in that case conforms to the general rule and is applicable to this case, but the facts are materially different. There the suit was by the owner of the land, who had granted a lease to the defendant, who had agreed to pay $60,000 in full, $5,000 cash, $25,000 in notes, with varying maturities, and the sum of $30,000 in oil from the leased premises, if the same was produced. However, no payment at all was made, and no well was drilled. The court held that the burden was on the defendant to show that the oil out of which $30,000 was to be paid could not be produced from the land. Having failed to do so, judgment was entered for the full amount of the contract.

In this case the promise was practically the same, that is, to pay the balance from a particular fund (i. e., the oil produced from the land), but the defendant had fully com-

plied with his obligation by making the cash payment, thereafter drilling a well, and giving plaintiff full returns from the production. Up to the time that the well was abandoned there could be no question that defendant endeavored to carry out the contract in absolute good faith, and plaintiff was a gainer thereby to the extent of over $45,000. In such case the promise could not be enforced until the fund was realized, unless defendant was thereafter guilty of negligence. Harris v. Wheeler (Tex. Com. App.) 267 S. W. 465; Greenwood & Tyrrell v. Helm (Tex. Civ. App.) 264 S. W. 221; 13 Corpus Juris, 631.

[2] It remains to be considered whether the well was in fact producing oil in paying quantities at the time it was abandoned, and whether plaintiff was guilty of negligence in plugging it. When the well was plugged it was producing about 7 to 8 barrels of oil a day and was constantly diminishing in production. It is shown that depreciation on the well and equipment amounted to about $500 per month, and there were overhead charges that are not shown in dollars and cents. These items should have been considered as part of the expense of operating the well. The actual cost of operating the well was a minimum of $125 per month, so that the total cost of operating the well was over $600 per month. The value of the total production of the well was not over $500 per month under the most favorable conditions, and from this was to be deducted the one-eighth royalty going to the owners of the well. Unquestionably the well was not producing oil in paying quantities.

[3] Plaintiff produced two witnesses who were engaged in the operation of pumping the well, one Ward and his wife. Except to say that the well was producing about 7 barrels of oil a day, but sometimes, when the operation was stopped for three or four days, that it would flow something like 10 barrels, the testimony of these witnesses was purely opinion. They were under the impression that if the well had been swabbed, or if new cups had been put in, it would have produced more oil; but they are entirely indefinite as to how much additional oil would have been produced, had this been done. On the other hand, there was testimony from several witnesses of experience to the effect that swabbing would have been dangerous to this well, and might have resulted in the collapse of the casing; that it was not necessary to renew the cups, because of the quality of oil produced; and that the method of pumping employed was calculated to produce the greatest quantity of oil, probably more than

had swabbing been resorted to. On this testimony, it may be considered conclusively proven that defendant was not guilty of negligence in the method of operating the well, and that no more oil could have been produced from it by any standard method.

[4] With regard to the duty of the District Court to direct a verdict for defendant in this case, it is well settled that the rule is this: Whenever it is clear that, if the jury should render a verdict for one party, the judge would be obliged to grant a new trial, in the exercise of sound discretion, it is his duty to direct a verdict for the other party. We think that, on the evidence in this case, a verdict should have been directed for defendant. Because of the error of the District Court in that respect, it follows that the judgment appealed from must be reversed, and the case remanded for a new trial.

Reversed.