## MOXLEY et al. v. ATLANTIC REFINING CO.
### Civ. 2365.

United States District Court
W. D. Louisiana, Shreveport Division.

Aug. 31, 1951.

C. J. Bolin, J. N. Marcantel and Albert S. Lutz, Jr., Shreveport, La., and Gerland P. Patten, Little Rock, Ark., for plaintiffs.

Herold, Cousin & Herold, Shreveport, La., for defendant.

PORTERIE, District Judge.

Motions were filed by each side for a summary judgment; the motion of the defendant is for a total dismissal; the motion by the plaintiff is for a partial dismissal.[1] The defendant has also filed a special plea of prescription as to one of the items sought to be recovered by the plaintiffs.[2]

The language of Rule 56, Fed.Rules Civ. Proc., Summary Judgment, Section (c), 28 U.S.C.A., which controls us here, provides: "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that [except as to the amount of damages] *there is no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law." (Emphasis supplied.)

The basis of plaintiffs' motion for a partial summary judgment is set out as follows:

"(a) That on the face of the pleadings and attached documents, together with the interrogatories and answers thereto filed herein, and affidavits attached, defendant breached the contract sued on herein and,

1. The defendant filed an answer promptly within twenty days of service, whether or not there were any pending motions of any character.

There was a motion for the production of documents by plaintiff; a set of interrogatories by plaintiffs to defendant; then a motion by defendant to strike certain interrogatories. The Court overruled the motion to strike certain interrogatories; defendant then complied fully. The defendant then filed an amended answer; plaintiffs objected to part of the answer as not being a legal defense; also objected to the proposed amended answer, particularly the amendment therein which included the three-year prescription plea. The Court at this time permits the amended answer to remain as drafted, including the plea of prescription.

Then, as above stated, the plaintiffs moved for a partial summary judgment and that was soon followed by a motion to dismiss and a motion for summary judgment by the defendant. A hearing was had and a record established. We permit every offer made.

2. The identical item sought to be recovered by the plaintiffs through their motion for a partial summary judgment.

therefore, is liable to plaintiffs for such amounts as may be determined.

"(b) The balance of the oil payment, in the sum of $91,004.98 [sic], with interest at the rate of 5 per cent per annum from March 1, 1941 until paid, which oil payments was the sole consideration for the sublease, became due and payable on the breach of the sublease on the part of the defendant by permitting the original lease to lapse and revert to the land and mineral owners without any previous notice to plaintiffs for the following reasons:

"The conditional obligation of the defendant to pay the oil payment, which was the sole consideration for the sublease, being a conditional obligation depending on the happening of the event of the lease producing oil sufficient to liquidate the oil payment out of the proportion stipulated in the sublease, became an absolute obligation to pay the balance of the oil payment when the defendant permitted, without the required thirty-days' notice to plaintiffs, the original lease to lapse (or be destroyed) and revert to the mineral and land owners, thereby preventing the fulfillment of the condition and making it impossible for the event to happen. (Rev.C.C.La. art: 2040)".

The basis of defendant's motion for a summary judgment is set out, as follows:

"For a summary judgment on the pleadings and the exhibits attached, the interrogatories and the answers thereto and the exhibits attached, the affidavits filed by the plaintiffs in support of their motion for partial summary judgment, and the affidavits filed by the defendant in response to plaintiffs' said motion for partial summary judgment.

"Defendant states that the record, as thus compiled, reveals that the defendant has not breached any obligation owing by it to the plaintiffs, and that therefore it is entitled to a summary judgment."

The interpretation of the following paragraph of the contract of sublease between the parties is the main issue between them: "Should Assignees elect to abandon said lease *while the same is producing oil or gas,* Assignees shall, thirty (30) days prior to such proposed abandonment, give Assignors written notice thereof and Assignors shall have the right within said period to demand that Assignees assign said lease to Assignors upon Assignors paying to Assignees in cash the reasonable salvage value of the casing then in any wells which may have been drilled upon the lease, and upon receipt of such notice and payment, Assignees shall assign to Assignors said lease and the casing located in any wells situated on the lease. The notice provided for in this paragraph shall be given in the same manner as is provided above for the giving of notice by each party to the other." (Emphasis ours.)

The plaintiffs seek a departure from the above rather clear language. They claim that under this language defendant had to give notice under the circumstances of the instant case. The defendant says that it never did " * * * abandon said lease while the same is producing oil or gas". Some facts are to the effect that the defendant tried to produce and did produce from the area as long as it could; then the production dwindled from time to time until the remittances made to the plaintiffs were, for the month of January, 1941, 44 barrels, and for March, 1941, 31 barrels. The defendant stopped producing altogether in March, 1941. Defendant claims now that these small and diminishing returns, followed by no returns at all, were an indirect notice to the plaintiffs that its contract was fulfilled.

The plaintiffs interpret the above language to mean, under the general custom of oil-well operators, and under the terms of the lease, and, particularly, under its commercial significance, as well as under what the Louisiana jurisprudence requires of the parties to a sublease, Louisiana Civil Code, Articles 1761, 1901, 1930, 1931, 2676, 2681, 2682, 2710, 2711, 2719, 2726, without the necessity of a contract specification therefor, there should have been a formal notice by the defendant, after it abandoned operations.

Moreover, plaintiffs say that the defendant is estopped from its present interpretation of the deciding paragraph, because of the letter of the defendant to

them, dated October 28, 1941, reading as follows:

"Under the terms of an assignment from you, which forms a part of our chain of title to certain leases in the Lisbon pool of Claiborne and Lincoln Parishes, Louisiana, provision is made for us to notify you by registered mail, addressed as above, in event we should elect to surrender or abandon any of these leases.

"We now desire to discontinue operating the following tracts and to abandon and plug the wells remaining thereon:

"H. W. Patton 'A', including Well No. 2, covering the SW/4 of the NW/4 of Section 6–20N–4W, Lincoln Parish.

"Maggie Patton 'B', including Well No. 2, covering the SE/4 of the SW/4 of Section 31–21N–4W, Lincoln Parish.

"Tatum 'A', including Well No. 2, covering the NE/4 of the SE/4 of Section 31–21N–4W, Lincoln Parish.

"E. Bennett, including Well No. 1, covering the N/2 of the NW/4 of the NW/4 of Section 6–20N–4W, Lincoln Parish.

"According to our records, the primary terms of the leases on the above tracts expire December 10, 1939.

"We should like for you to inform us rather promptly whether you desire to have the leases on the foregoing tracts reassigned to you, in which event you would of course pay us for the reasonable salvage value of the casing and other materials in the wells." [3]

On the one hand, from the plain and unambiguous language of the contract, it would seem that no notice is necessary, if the abandonment is after the area has run dry under prudent operation and that the lease is not producing oil or gas. But what about the effect of the above-quoted letter of the defendant company to the plaintiffs? Does the letter disclose what the defendant company thought its obligation to be?

In answer to this question there is much conflicting evidence offered under the affidavits of the litigants.

The plaintiffs are urging, with supporting affidavits, the contention in their motion for a partial summary judgment, that the amount of $91,004.98 should be remitted instanter by the defendant,[4] because, under the relation of lessor and lessee and under the general custom of the oil business, notice should have been given. That the implied (rather direct) notices contained in the dwindling monthly remittances that were received by the plaintiffs are unavailing.

It is the claim of the plaintiffs that under Article 2725 of the Louisiana Civil Code and under the case of Smith v. Sun Oil Co., 165 La. 907, 116 So. 379, and, finally and conclusively, under the provisions of Article 2040 of the Louisiana Civil Code, reading as follows: "The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it", the defendant company is made immediately liable to pay the specified so-called consideration of $100,000, less the aggregate amounts paid during production—and hence their motion for a partial summary judgment.

The defendant, in its motion for a full summary judgment, claims that, under the unambiguous language above-quoted, no notice at all was due; that the defendant operated the lease until there was no production, as it had a right to do; that the lease expired according to its own term when the production was so small that it was not in paying quanti-

---

3. The primary term of the main lease (five years) ran out on December 10, 1939, from which date only production could keep the lease alive.

4. The sublease, in part, reads as follows: "The said Anna R. Moxley and J. N. Moxley, as a part of the consideration hereof, reserve an oil payment affecting the above described lease in the amount of One Hundred Thousand ($100,000.00) Dollars * * *".
Production paid $8,985.46 of this; so, the motion for a partial summary judgment is directed to the sum of $91.014.54, left allegedly unpaid.

ties; that the fulfillment of its obligation to the plaintiffs was full and complete.[5]

Moreover, the defendant claims to have operated this lease as a prudent operator. It claims that under the circumstances—the provisions in the sublease reading as follows: "Further agree to operate said properties at all times as a prudent operator would do under like circumstances"—in the year 1941, the time of the alleged breach of contract, when there was no market for gas, and even if distillate had been produced it would have sold for only $1.10 per barrel, if it decided then that gambling ventures at greater depths at very high costs were not warranted, it is guiltless under the contract.

The defendant further advances with supporting affidavits that prudent operation during the life of the lease did not require water-flooding, nor the injection of gas, and that a prudent operator would not have drilled a deep hole on this 40-acre tract prior to April, 1941. Consequently, the defendant says it did not breach any obligation to the plaintiffs and, therefore, should have a summary judgment in its favor.

The respective motions for summary judgment are supported by numerous affidavits. These affidavits of the movants furnish much conflicting evidence. We have no reason to believe or disbelieve either set of these affiants; yet, it remains true that their tales lead to opposite conclusions.

Another basic difference between these litigants is that (a) the plaintiffs wish now to look backward at all events as they happened after April of the year 1941, at which time the defendant discontinued operation on the 40-acre tract, and wish to allege that the defendant should have done this, not that, etc., all in a manner to make a case for damages; and, (b) the defendant wishes to bring things legally back to the facts as they existed in April of the year 1941 and then to judge the case as of then without having the benefit of hindsight.

In other words, the plaintiffs are using their hindsight by saying: "Look, in 1941, had you given us notice (though we might have had it from the fact that these monthly checks had dwindled to nothing), we would have gone on the area and initiated new exploration to different and deeper sand structures (just like the neighbors have done or even the later owners of the instant lease did) and we would have gained tremendous profits."

In the face of the conflicting affidavit-evidence that naturally may be gathered by zealous advocates in a question of this character, we are unable, conscientiously, to grant either one of the motions for summary judgment.

Advocates proposing motions for summary judgment in their favor must realize the point we have just made. Moreover, they must realize that we have to consider the testimony of 17 [6] witnesses whom we do not see; 17 witnesses who do not meet a cross-examiner for a single question. Also, it might be that upon observing one of these witnesses in person on the witness stand no weight at all would be given by a jury or, as in the case of these motions, by the judge to his testimony.

The following two cases give far better what we have in mind here than we could express it: Gray Tool Co. v. Humble Oil & Refining Co., 5 Cir., 186 F.2d 365; Colby v. Klune, 2 Cir., 178 F.2d 872.

These motions for summary judgment are, first, permissible; but, more importantly, they are fruitful of much help to the trial judge. The Court gets to know, from the briefs and oral arguments, the important facts which are or are not to be in the case, and thus informs itself as to the principles of law that follow these facts one way or the other. The labor is not lost, especially in a complex case such as

5. Lyons, who dealt with both parties, says notice was to be given if defendant "elected to abandon the wells on the leases while they were producing oil in commercial quantities"; he does not exclude the words: "while they were producing oil in commercial quantities".

6. They number five for the plaintiffs and twelve for the defendant. The chief plaintiff has several affidavits and then one serves each side with an affidavit.

the instant one, because the conduct of a successful trial by the judge calls for much knowledge and full study of the case to be tried.

### Prescription.

Whether it be peculiar to us or not, we do know that with a full hearing in a case, when all the facts get relatively valued because properly placed as to time and intent, we are then the better able to rule satisfactorily and legally.

Take the deep question here as to whether the plea of prescription is to be governed by the overall pleadings and the facts thereunder (the breach of a general contract being the real suit—10-year prescription), or, whether the plea is to be governed by a minor relation between the parties during the course of their full contract (the oil payment being an independent action, it is "rent" in a sublease—3-year prescription), may only be satisfactorily answered after a full trial.

We must refer the plea for a later decision during the trial at the proper time, either in the charge to the jury, or at the time of the filing of a motion for a directed verdict.

Accordingly, the motions for summary judgment should both be overruled and denied; the plea of prescription should be referred to the merits.

And It Is So Ordered.