HAMITER, Justice.
 

 As the holders and owners of certain alleged leasehold, mineral and other rights in and to a 50 acre tract of land in Claiborne Parish described as SE}4 of NEJ4 and South 10. acres of the NE{4 of NEJ4 of Section 21, Township 23 North, Range 8 West, plaintiffs are attacking in this suit, as having expired and being null and void, ah oil, gas and mineral lease affecting such property, of date February 14, 1919, under which the defendants claim.
 

 On sustaining exceptions of no cause of action and pleas of res judicata tendered by the several defendants, the district court dismissed the demands of plaintiffs. The latter are appealing.
 

 Two other suits having the same purpose and involving the identical parties and property were considered heretofore by this court, ánd both were dismissed on exceptions of no cause of action. See Stacy v. Midstates Oil Corporation, 1947, 214 La. 173, 36 So.2d 714 and Bond v. Midstates Oil Corporation, 1951, 219 La. 415, 53 So.2d 149, 154. The opinions in .those cases recite accurately and in detail most of the facts leading up to and forming the basis of the instant litigation.
 

 Allegations in the petitions of the prior suits, as well as those made by plaintiffs herein, disclose that J. E. Smitherman acquired the assailed lease of date February 14, 1919 (under which defendants are claiming) from R. P. Bond, it covering a total of 320 acres. On September 10, 1930 Smitherman sold and transferred to the Ohio Oil Company such lease insofar as it affected 200 acres, including the 50 acres involved here, along with other leases covering several thousand acres, he expressly reserving for himself a royalty interest (overriding or excess royalty) “amounting to %2nd of
 
 *815
 
 the proceeds of all of the oil which may hereafter he produced from any part of the above described lands from a depth of more than 3000 feet below the surface.” Other parties acquired from Smitherman the remaining portion of the Bond lease (120 acres). From the 120 acres there has been continuous oil production since about 1920, but during a short period after 1940 there was none from the 200 acres.
 

 By mesne conveyances T. L. James & Company, Inc., and later Midstates Oil Corporation (both defendants herein) became the owners of that part of the lease covering the
 
 Ei/2
 
 of NEJ4 of Section 21, Township 23 North, Range 8 West, it embracing the 50 acres in question and having been included in the 200 acres involved in the Smitherman-Ohio Oil 'Company transaction of September 10, 1930. On the 80 acres a well was drilled, and in April, 1942 it was completed as a producer at a depth of more than 3000 feet. Meanwhile, on February 24, 1942, plaintiffs Stacy and Ascher acquired an oil, gas and mineral top- lease on the mentioned SO acres.
 

 To sustain the validity of their top lease such plaintiffs, joined by mineral and land owners, began attacking the original BondSmitherman lease of February 14, 1919 as having expired by its terms. In the first two suits they contended that the transfer by Smitherman to Ohio Oil Company of September 10, 1930 was an assignment, rather than a sublease, which had the effect of dividing the' o'riginál lease'by separating the conveyed 200 acres from the remaining;, 120 acres; and that, in view of the division,, the lease as to the 200 acres (including the-50 acres in question) expired when production therefrom ceased, the production on the remaining acreage having afforded it no benefit. The contention was found to be without merit ultimately because of Smitherman’s having expressly reserved from-, the operation of the conveyance instrument: the %2nd overriding royalty interest. Thus,, in the opinion of the second case styled. Bond v. Midstates Oil Corporation the following was said and decided:
 

 “We would think, therefore, that it is a settled proposition of law in this.State that in a transfer of a lease such-as we have before us that where the-lessee making the transfer reserves unto himself an overriding royalty, that is a retention of an interest, regardless of any other terms or conditions that may appear, sufficient to characterize the transfer as a sublease. * * *
 

 “Our conclusion is that the instrument of September 10, 1930 between J. E. Smitherman and Ohio Oil Company is a sublease which did not effect a division of the original R. P. BondSmitherman lease of June [the correct month is February] 14, 1919, and in the absence of any allegation in the plaintiffs’ petition that there was no production of-oil in paying quantities from the remaining 120 acres of that original lease (such production now be- . ing conceded), the exception of. -no
 
 *817
 
 cause or right of action filed by the defendants was well founded and should have been sustained.” (Brackets ours.)
 

 After the finality of that decision the 'third or present action was instituted. As 'before shown it resulted in a judgment dismissing the demands of plaintiffs, the district court having sustained the exceptions ■ of no cause -of action and pleas of res judicata, and therefrom plaintiffs perfected this appeal.
 

 Accepting the holding that the mentioned transfer of September 10, 1930 was a sublease, appellants contend in this suit that .Smitherman’s reserved %2nd overriding royalty, which was responsible for the instrument’s being so characterized, has since been extinguished by (1) the liberative prescription of ten years and (2) a voluntary relinquishment of it by Smitherman; and that, upon the extinguishment of the ■overriding royalty, the instrument lost its character of a sublease and became a mere assignment, thereby effecting a division of the original Bond-Smitherman 320 acre lease with the result that the lease as respects the 200 acres was not kept in force by production on the remaining 120 acres. As a basis for this contention plaintiffs made the following allegations in their petition :
 

 “Petitioners show that there was no. production of oil or any other minerals from any portion of the land embraced in the R. P. Bond-Smitherman lease. from a depth of more than 3000 feet below the surface on September 10, 1930, and for a period of more than ten years thereafter, and that the said J. E. Smitherman received no proceeds of oil whatsoever attributable to the
 
 Vs2
 
 overriding royalty interest retained by him in the instrument of September 10, 1930, and that consequently the said overriding royalty interest became extinguished by the running of the liberative prescription of ten years, which prescription is specially pleaded herein.
 

 * * * . * *
 

 “Petitioners show that on February 25, 1942, by instrument recorded in Conveyance Book 130, page 177 of the Records of Claiborne Parish, Louisiana, a certified copy of which is attached hereto and made a part hereof, the Ohio Oil Company' and James E. Smitherman entered into a compromise and settlement whereby, effective December 21, 1941, James E. Smitherman released, surrendered and quitclaimed to the Ohio Oil Company 'any and all claims, demands, rights, title and interest whatever in or to any and all excess royalty’ under the R. P. BondSmitherman lease, insofar as it affected the 80 acres described as the East Half of the Northeast Quarter
 
 (Ei/i
 
 of NEj4) of Section 21, Township 23 North, Range 8 West, Claiborne Parish, Louisiana.”
 

 •Directing attention to the quoted allegations, and insisting that they were not made .
 
 *819
 
 in the prior suits, counsel for plaintiffs comment in their brief as follows:
 

 “The merits of the respective claims of these parties'have never been passed upon by this Court. Now, and for the first time, all of the facts of this matter are before this Court. The first suits have determined the legal category of the transfer from Smitherman to the Ohio. This suit is to determine the effect of the newly alleged facts on this transfer and the rights of the parties thereunder.”
 

 Then, in their brief, plaintiffs’ counsel declare that the issues of this cause are:
 

 “First: When a right to overriding royalty, reserved' in the transfer of a mineral lease, which characterizes the transfer as a sublease, expires by prescription or by relinquishment by the owner, is the transfer thereafter characterized as an assignment?
 

 “Second: Does a right to overriding royalty on a lease which is conditioned upon future production prescribe and terminate when 10 years have expired without that condition having been fulfilled?
 

 ■ “Third: If still existent after September 10, 1940, was the right to overriding royalty reserved by J. E. Smitherman. in his transfer to the Ohio Oil Company released and relinquished by him?”
 

 Pretermitting for the moment the first stated issue, we proceed to a consideration of the question of whether Smitherman’s. overriding royalty was lost by the specially pleaded liberative prescription of ten years.. Regarding the plea plaintiffs’ counsel say:.
 

 “The circumstances of the present case-are identical with those in the landmark, royalty case of Vincent v. Bullock, 1939, 192 La. 1, 187 So. 35, 39, except that' the conditional right to royalty is upon a mineral lease. Vincent v. Bullock is the foundation of plaintiffs’ case on prescription. * * * It holds that a reserved right to receive royalty from possible future production from land is a real obligation conditioned on production and the condition of the obligation is broken when the time, as limited by law, expires without fulfillment of the condition. * * * ” In this connection appellants concede, as we-appreciate their position and as they must, that Smitherman’s overriding royalty has ■ not prescribed if the ten year non-user prescription doctrine of the cited case is. inapplicable here.
 

 The two cases appear to involve different and distinct types of royalty, notwithstanding that the right to receive payment under-each was. conditioned upon future production. The royalty of the Vincent case resulted from a reservation in the sale of' land; it in no manner related to or affected an oil and gas lease, as here. Attached to and capable of passing with the immovable, the royalty reservation there imposed a real obligation on and was an appendage of the property itself. The overriding royalty
 
 *821
 
 here, on the other hand, is merely an interest in an existing oil and gas lease that was reserved by the lessee when transferring the lease; it is not an obligation imposed upon or affecting the. land. It is an appendage of the lease, in other words, not an appendage of the immovable itself as was the royalty in the Vincent case.
 

 Quoted with approval in Vincent v..Bullock are the following observations of Mrs. Harriet Spiller Daggett, contained in her excellent monograph entitled “Mineral Rights in Louisiana,” whereby she points out the above-mentioned distinction: “ * * The royalty depends upon the continued existence of the right to which it is an appendage. It cannot have a life of its own any more than could interest exist apart from the note or debt to which it is attached. If a party to a contract sells royalty under an existent lease, he is selling a part or the whole of his rent due from the lease upon which his royalty depends. If he sells royalty under an existing servitude, he is selling a part of the proceeds to issue from the use of that servitude and the royalty sale is dependent upon the life and use of the servitude. If a landowner sells royalty he is selling the proceeds that may issue from his right to explore for minerals on his. own land, which is an inherent part of his ownership of the land. If a landowner sells his land and the right to explore inherent in the land and reserves royalty, he is reserving a share in the anticipated production to result if and when successful exploration ensues upon the land sold in full ownership.” Section 58. “The legal nature of royalty must be grounded upon the contract in which it appears. If it be used within the understanding of the parties to indicate a sale or reservation of the right to extract oil and gas, then it is a servitude by whatever name it may be called, and the established rules connected with this type of servitude will apply. If it is used in a lease contract to indicate a proportionate share of the production going to the landowner or the lessor of the servi- ■ tude or to his lessee, the law of lease and sublease will ■ be applied: If the word is used in the contract to indicate a passive interest in possible production, without the leasing or production privilege usually inherent in the right, then a new and as yet, uninterpreted situation appears, upon which the court has not declared itself fully. * * * ” Section 59. (Obviously the last quoted observation contemplated the situation that arose in the Vincent case — one that is clearly distinguishable from a royalty stipulation in connection with a lease contract to which reference is made in the preceding observation.)
 

 The royalty reservation of the Vincent case was further discussed in Union Sulphur Company, Inc., v. Andrau, 217 La. 662, 47 So.2d 38, 40 (it involved a similar royalty), the court there commenting: “ * * * we determined that such a sale with royalty reservation, not being forbidden by law, constituted a contract which
 
 *823
 
 was to be given legal effect according to the intent of the parties, and concluded that from its nature and by the express provisions therein, such a royalty reservation imposed on the property a real obligation, since it was attached to an immovable, and passed with the property, conditioned upon the production of oil and gas or other minerals; but if such condition did not happen within ten years, such royalty interest was lost by the prescription of ten years. * * ”
 

 As shown above the overriding royalty interest here is attached to the lease, not to the property itself. Its existence, therefore, depends on the pendency and duration of the lease. This was made clear in Wier v. Glassell, 216 La. 828, 44 So.2d 882, 885, the court, in passing upon a like overriding royalty, observing:
 

 “ * * * Stated in another form it may be asked: Does the existence of such an overriding royalty depend upon the existence of the lease itself to which it is attached and consequently expires with the termination of that . lease, or does it attach to the land itself and continue to exist and to be attached to any future leases taken by the assignee on the same property?
 

 * * * 5‡£ * *
 

 “The overriding royalty reserved by ' the plaintiff 'in the present case was a right created by the lease in which he was the lessee and which he assigned to the defendant. It depended on the continued existence of that lease to which it was an appendage. It could • have no greater life than the lease itself and consequently upon the termination of the lease it became extinguished and the defendant was at liberty to-deal with the owners of the property and obtain new leases either in his own name or through an agent. * * * ”
 

 True, the court in the Wier case did not also say that the overriding royalty could' have no lesser life than the lease. But the-pronouncement that the royalty was an appendage of the lease carries the implication that both would stand or fall together..
 

 Viewing an overriding royalty in this-, light clearly the ten year non-user prescription doctrine of Vincent v. Bullock could have no application to one attached to a. lease terminating in less than ten years, say in three years. And it follows necessarily that such doctrine is likewise inapplicable if and when the lease, as in this case, endures for a period longer than ten years.
 

 This brings us to the claim of appellants, urged in the alternative, that by an instrument of date February 25, 1942 Smitherman voluntarily quitclaimed, surrendered' and relinquished his %2nd overriding royalty to the Ohio Oil Company; and that, “When Smitherman released the Ohio, he-released his own sublease and surrendered his position as sublessor. This necessarily terminated the sublease between Smitherman and- the Ohio which thereupon became
 
 *825
 
 an assignment with resulting segregation and division of the lease. * * * ”
 

 For determining this issue consideration must be given not only to the instrument of February 25, 1942 but also to other agreements involving Smitherman and the Ohio Oil Company entered into near that date and to the circumstances surrounding their confection. Thus, it appears that sometime prior to September 15, 1941 T. L. James & Company, Inc. (a defendant herein), began negotiating with the Ohio Oil Company (and its co-owner Gulf Refining Company) to acquire a sublease on a specific 480 acres, including the involved 50 acres, with the view of drilling a deep test thereon. The mentioned 480 acre tract was a part of the several thousand acres covered by the sublease from Smitherman to Ohio Oil Company of date September 10, 1930 on which the %2nd overriding royalty had been reserved. At the time of the negotiations there existed a dispute between Smitherman and Ohio Oil Company regarding such reserved royalty, the company taking the position that it had previously prescribed.
 

 On September 15, 1941, when it was evident that the 480 acre sublease would be acquired, T. L. James & Company, Inc., and Smitherman entered into a written contract in which the latter obligated himself to pay to the former the sum of $5,000, this being “a bottom hole contribution toward the cost of drilling the said well.” As the instrument disclosed Smitherman would benefit greatly from a producing well there, he having a %2nd overriding royalty' on the leases affecting the 480 acres and owning interests in leases covering considerable other acreage in that area. The contract bound T. L. James & Company,, Inc., to pay to Smitherman (besides a described oil payment) an overriding %2nd royalty on all oil produced from the leases on the 480 acres, and it specifically provided that said Jknd royalty would be inclusive and not exclusive of the overriding-royalty retained by Smitherman in contracts with reference thereto between him and the Ohio Oil Company, the said T. L. James & Company, Inc., “obligating itself to pay a
 
 Ya
 
 2nd overriding royalty in any event but not a greater amount.” This specific provision clearly indicates that the parties had in mind the prescription dispute 'between Smitherman and Ohio Oil Company respecting the originally retained royalty, and by it T. L. James & Company, Inc., was agreeing to assume the payment of that royalty as to'the 480 acres whether prescribed or not.
 

 On December 5, 1941 the Ohio Oil Company formally transferred to T. L. James & Company, Inc., the leases affecting the mentioned 480. acres, declaring in the conveyance instrument that its execution thereof was not to be considered as interrupting or suspending or otherwise affecting any accruing or accrued prescription with respect to the Smitherman overriding royalty.
 

 Having obtained such leases T. L. James & Company, Inc., on December 15, 1941,
 
 *827
 
 executed an instrument which recited an assignment to Smitherman of a %2nd overriding royalty affecting the 480 acres. Obviously, this was done in compliance with the agreement of September 15, 1941, at which time no formal transfer of the leases had-been made, because a subsequent instrument involving the same parties (of date March 4, 1942) declared that, “ * * * the one-thirty-second (%2) overriding royalty conveyed by said assignment of December 15, 1941, was to take the place, on the acreage therein described, of the one-thirty-second (%s) overriding royalty provided for in said agreement of September 15, 1941, as to said acreage, and was to be inclusive and not exclusive of the one-thirty-second (%2) overriding royalty granted to James E. Smitherman as to said acreage in the said agreement between James E. Smitherman and The Ohio Oil Company, dated September 10, 1930.”
 

 Then came the instrument of February 25, 1942 which is relied on by appellants as disclosing a surrender or relinquishment by Smitherman to the Ohio Oil Company of his originally reserved %2nd royalty. Intended as a compromise agreement it makes provision for and evidences a settlement, effective as of December 21, 1941, between Smitherman and the Ohio Oil Company of their controversy as to whether or not the oil payment and overriding royalty stipulated for in conveyance instruments of September 10, 1930 and October 14, 1932 (these ■covered leases affecting several thousand acres) has been extinguished by prescription. In this connection the agreement states in part:
 

 ■
 

 “The excess royalty amounting to one-thirty-second (J32) of the proceeds of all of the oil produced and saved from any part of the lands covered by said conveyance dated September 10, 1930 from any depth of more than three thousand feet below the surface, as reserved and excepted from the operation of said conveyance by James E. Smitherman to The Ohio Oil Company of date September 10, 1930, shall be and the same is hereby changed and reduced to an excess royalty interest amounting to one-forty-eighth (%s) of the proceeds of all of the oil produced and saved from any depth of more than three thousand feet below the surface from any part of the lands described in said conveyance of date September 10, 1930, except four hundred and eighty (480) acres subleased' and assigned by The Ohio Oil Company and Gulf Refining Company to T. L. James & Company, Inc., by instrument dated December 15, 1941, and filed as Instrument No. 145705 of the Conveyance Records of Claiborne Parish, Louisiana, as to which said four hundred and eighty (480) acres neither the one-thirty-second (%2) excess royalty nor the one-forty-eight
 
 QAs)
 
 excess royalty hereinabove referred to is payable by The Ohio Oil Company. :]c ^ ‡ »
 

 
 *829
 
 Also contained in the agreement of February 25, 1942, and found near the latter part thereof, is the following provision: “ * * * the said James E. Smitherman * * * does hereby release, surrender and quitclaim to said The Ohio Oil Company any and all claims, demands, rights, title and interest whatever in or to any and all excess royalty and money payment out of oil under said leases covering said lands .and the production therefrom, other than and except as to the said one-forty-eighth (J4s) excess royalty and the said •one Thousand Five Hundred ($1,500.00) Dollar per well oil payment, as fully set out above in this agreement.” It is the last-quoted clause which appellants particularly rely on as having effected a complete surrender or relinquishment by Smitherman of his %2nd overriding royalty. We do not so view it. All that it did, and its only purpose, was to relieve the Ohio Oil Company of the obligation of itself paying the Smitherman royalty on the 480 acres previously subleased by it to T. L. James & Company, Inc., which obligation the latter had assumed in its contract with Smitherman of date September 15, 1941. This conclusion is inescapable when the clause is considered along with such assumption and is also read in connection with that part of the compromise agreement (above quoted) which provides for a reduction of Smitherman’s royalty (from %2nd to J4sth) on the leases affecting the several thousand acres covered by the September 10, 1930 conveyance, “except four hundred and eighty (480) acres subleased and assigned by the Ohio Oil Company and Gulf Refining Company 'to T. L. James & Company, Inc. by instrument dated December 15, 1941 * * * as to which said four hundred and eighty (480) acres neither the one-thirty-second (%2) excess royalty nor the one-forty-eighth (%s) excess royalty hereinabove referred to is payable by the-Ohio Oil Company.”
 

 Having determined that Smitherman’s. overriding royalty has not been lost either by prescription or by a voluntary relinquishment, we need not consider appellants first stated issue (hereinabove quoted and pretermitted).
 

 Also, it is unnecessary for us to discuss-defendants’ pleas of res judicata. Appellants concede that the pleas are meritorious-in the event we hold (as we do) that the district court correctly sustained the exceptions of no cause of action.
 

 For the reasons assigned.the judgment appealed from is affirmed.
 

 MOISE, J., absent.