**ATLANTIC REFINING CO.**

v.

**MOXLEY et al.**

**MOXLEY et al.**

v.

**ATLANTIC REFINING CO.**

No. 14676.

United States Court of Appeals
Fifth Circuit.

April 9, 1954.

Sumter P. Cousin, Herold, Cousin & Herold, Shreveport, La., for appellants.

J. N. Marcantel, Shreveport, La., Gerland P. Patten, Little Rock, Ark., Cornelius J. Bolin, Albert S. Lutz, Jr., Bolin & Bolin, Shreveport, La., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

The suit was for the recovery of $270,-854.54,[1] with legal interest from March 1, 1941, arising out of the claimed breach by the defendant of a sublease of an oil, gas, and mineral lease on forty acres of land in Claiborne Parish, Louisiana.

The claim was that defendant, in violation of the reassignment provisions[2] of the sublease, abandoned it while the same was producing oil or gas without first giving plaintiffs the required thirty days prior notice of said proposed abandonment, causing plaintiffs to lose the lease and thereby suffer the damages sued for.

The defendant, denying the violation charged against it, alleged that it produced the property, as a prudent operator should and as required of it, as long as the premises were productive of oil or gas in paying quantities, and that before it abandoned the property, it gave the plaintiffs the required prior thirty days notice of its intention and offered to reassign the lease, and plaintiffs refusing the offer of assignment, defendant thereafter abandoned the lease, as it had a right to do.

Motions for summary judgment, supported by many affidavits, were filed by

1. This was itemized as follows:
   (1) The balance due on the oil payment reserved ..$ 91,014.54
   (2) The cost of drilling and completing the two wells which the defendant drilled on the property, less the salvage value .............. 75,840.00
   (3) The market value of a valid and subsisting lease without the wells ............... 4,000.00
   (4) Future profits from sale sublease or operations of the lease ........ 100,000.00

2. "Should Assignees elect to abandon said lease while the same is producing oil or gas, Assignees shall, thirty (30) days prior to such proposed abandonment, give Assignors written notice thereof and Assignors shall have the right within said period to demand that Assignees assign said lease to Assignors upon Assignors paying to Assignees in cash the reasonable salvage value of the casing then in any wells which may have been drilled upon the lease, and upon receipt of such notice and payment, Assignees shall assign to Assignors said lease and the casing located in any wells situated on lease. The Notice provided for in this paragraph shall be given in the same manner as is provided above for the giving of notice by each party to the other."

plaintiffs and by defendant, and upon consideration by the court, in a written opinion,[3] overruled.

The case then coming on to be tried to the jury and submitted to it on a lengthy charge, which included a form verdict,[4] there was a verdict as follows:

A. ———
B. ———
C. $2000.00
D. $3000.00

Appealing from the judgment for five thousand dollars entered on the verdict, defendant is here insisting, for the reasons advanced and insisted on in its motion for summary judgment, that, as matter of law, the verdict and judgment may not stand.

It, therefore, urges upon us that the record fails to support plaintiffs' charges that it breached its contract, that, indeed, it affirmatively and beyond any controversy establishes that it did not do so, and that the judgment should be reversed and rendered in its favor.

The plaintiffs, on their part, urge upon us that, under the admitted and uncontradicted facts, they were entitled to a verdict as matter of law, and the judgment should be amended so as to allow them a recovery, for $52,240.00 as the cost of drilling and casing the two wells, and $91,004.91 balance due on the oil payment. In the alternative, they pray that "the cause be remanded to the lower court with proper instructions for a partial new trial in order to correct and amend the judgment so as to allow the two additional items herein claimed, there being no issues of fact to be decided."

This is not to say that plaintiffs, as appellants, do not assign procedural errors. As a matter of fact they specify forty-four. It is to say, though, that defendant-appellant is not claiming procedural errors or seeking a reversal because thereof, and that, while plaintiffs, as appellants, do assign many such errors, their real insistence is the same as defendant's, that there are no issues of fact to be determined but only issues of law. The defendant, in short, urges that, upon the undisputed facts the judgment should be reversed and here rendered in its favor, while the plaintiffs insist that it should be amended to afford them the additional recovery sought.

Because the contention of plaintiffs that, as matter of law, the defendant breached its contract, and that of defendant that, as matter of law, it did not,[5] underlies the claim each puts forward for relief, and if defendant's contention is sustained by us, both appeals will be thereby disposed of, we address ourselves first to defendant's appeal.

Throughout these proceedings, in its answer, in its motion for summary judgment, on the trial, and here, the contention on which defendant rests its appeal has been consistently maintained. On pages 11, 12 and 13 of its brief, this contention is thus stated:

"Of course, if you find for the defendant, then there will be nothing in any one of those blanks, and the other verdict is put at the bottom of the sheet, 'We, the jury find for the defendant.' * * *"

---

3. Moxley v. Atlantic Refining Co., D.C., 99 F.Supp. 499.

4. This instructed the jury to set forth the amount allowed as damages, if any, for:
"(a) Amount allowed on oil payment claimed. * * *"
"(b) Amount allowed for cost of drilling and completing Patton 'B–1' and Patton 'B–2', less salvage value. * * *"
"(c) Amount allowed as market value of a valid and subsisting lease on the property, and
"(d) Amount allowed for future profits from the sale, sub-lease, or operation of lease. * * *"

5. In their reply brief, at page 2, plaintiffs-appellants, recognizing that this is so, state:
"We have read and fully analyzed defendant's brief and find that there is only one issue presented therein, and that is whether there is any evidence in the record to support the verdict of the Jury that the defendant breached its contract. No other issue is raised by defendant's appeal."

"Defendant's contention is that the original lease held by the plaintiffs, which was for a term of five years and as long thereafter as oil or gas be produced in paying quantities, was for a fixed term, to-wit: For a primary term of five years and, if the lease produced, as long as it produced in paying quantities. Parten v. Webb, 197 La. 197, 1 So. 2d 76; Caldwell v. Alton Oil Co., 161 La. 139, 108 So. 314, 318; Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583, and cases there cited; Gas Ridge v. Suburban Agricultural Properties, 5 Cir., 150 F.2d 363; that the plaintiffs assigned said lease for its remaining term subject to the election of the defendant to abandon the lease while it was producing oil. Plaintiffs had the right to sublet the lease for a lesser term, which they did not do. 32 Am.Jur. 340 § 417; Robinson v. Ewert, 8 Cir., 291 F. 9, at page 12; Audubon Hotel Co. v. Braunnig, 120 La. 1089, 46 So. 33; Ascher v. Midstates Oil Corp., 222 La. 812, 64 So. 2d 182; Wier v. Glassell, 216 La. 828, 44 So.2d 882–885 and cases there cited.

"Consequently, the term of the sublease sued on here was fixed: Said sublease was to last as long as the property produced in paying quantities, subject to the election of the defendant above mentioned, otherwise it would have been invalid for want of a fixed term. Sam George Fur Co. v. Arkansas-Louisiana Pipeline Co., 177 La. 284, 148 So. 51.

"Under the uncontradicted evidence in the record the lease and the sublease both ceased when the production was so small that the property could not be produced in paying quantities—that is prior to March 1941; that as the owner of the sublease the defendant had the right to produce the property throughout its term; and if, in the exercise of that right, the lease terminated because it was no longer capable of produc-ing in paying quantities, it was no fault of the defendant and the defendant breached no obligation owing to the plaintiffs. United Central Oil Corp. v. Helm, 5 Cir., 11 F.2d 760.

"Defendant's position is that in operating the property it acted throughout as a prudent operator under the circumstances. It produced the property until the wells dwindled to a barrel a day; that it was not required to produce or hold on to the property any longer because no prudent operator is required to operate at a loss; that it did not, during the life of the lease (and surely it was under no obligation to do anything after the lease expired), drill a deep well on the property because, under the conditions then prevailing, such an operation would not have been prudent. It did not then water-flood the property because under the conditions such an operation was likewise not feasible, nor would it have been practical nor profitable; that the defendant was only legally obligated to do what a prudent operator would have done under the same circumstances. Hart v. Standard Oil Co., 148 [146] La. 885, 84 So. 169; Doiron v. Calcasieu Oil Co., 172 La. 553, 134 So. 742; Coyle v. North American Oil Consolidated, 201 La. 99, 9 So.2d 473; Coastal Club, Inc. v. Shell Oil Co., Inc., D.C., 51 F.Supp. 819; Gerson v. Anderson-Pritchard [Prichard] Production Corp., 10 Cir., 149 F.2d 444; Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634; Humble Oil & Refin. Co. v. Romero, 5 Cir., 194 F.2d 383. In deciding what a prudent operator should do at the time he is called upon to act things which came to light and new methods of operation developed subsequent thereto are not to be considered. Stanolind v. Sellers, 10 Cir., 174 F.2d 948, 949.

"In addition, plaintiffs, never having put the defendant in default as

to the operations of the property, never having called upon defendant to drill a deep well nor to waterflood, cannot now complain and seek damages because of defendant's failure to do these alleged things. Pipes v. Payne, 156 La. 791, 101 So. 144; Hiller v. Humphreys Carbon Co., 165 La. 370, 115 So. 623; Temple v. Lindsay, 182 La. 22, 161 So. 8; Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583; Article 1912 Louisiana Civil Code."

Plaintiffs, in opposition to these views insist that the record contains ample evidence to support the finding of the jury that the defendant breached its contract in that, though it had agreed "to operate the premises at all times as a prudent operator would do under like circumstances", it failed to do so, and in that the critical clause of the sublease for giving notice before the lease was abandoned was violated by the acts of defendant in not giving notice until months after it had ceased to produce oil from the lease.

To plaintiffs' contention that it owed plaintiffs the duty, under the notice clause of the sublease, to afford them the opportunity of taking the lease back before it had lapsed for want of sufficient production, defendant opposes the plain and simple language of the clause which provides not that sublessees are obligated to surrender to plaintiffs as sublessors any part of the granted term, but only that, if sublessees elect "while the same is producing oil or gas", to abandon the lease, they will thirty days prior to such proposed abandonment give notice to the sublessors, and upon the terms fixed in the clause assign the lease back to them.

To plaintiffs' claim that other operators in the field did not elect to abandon their leases and therefore it must be found that defendant had not operated the lease as a prudent operator would do, defendant opposes the principles established in the jurisprudence by which the question of prudent operation *vel non* is determined and the undisputed evidence that for many months before defendant elected to abandon it the lease had not produced and, under the principles governing prudent operation, could not be made to produce in paying quantities.

On these points of difference between plaintiffs and defendant, we find ourselves in complete agreement with the defendant. The sublease did not impose, it was not intended by it to impose upon the sublessees any *obligation to abandon the lease* while the lease was still producing oil and gas. Sublessees were granted the right to hold the lease throughout its full life if they desired to do so. The notice clause was applicable only in the event they elected not to. The claim, therefore, it seems to us, implicit if not expressed in plaintiffs' position, that while the invoked clause authorized the defendant to abandon the lease, it obligated it, upon penalty of being held liable in damages, to make sure that the lease had not expired for nonproduction before it did so, is contrary to the clearly expressed intent and purpose of the invoked clause. This was that sublessees were entitled to develop and operate the lease for and during its full life, subject only to the obligation imposed upon them by the invoked clause that if, while the lease was producing oil or gas, they decided to abandon it, they must give sublessors thirty-days prior notice of their intention to do so.

We are of the clear opinion that the evidence shows, as defendant claims it does, that as matter of law at the time defendant determined to abandon the lease and give plaintiffs notice of its intention to do so, the lease had lapsed not because of any default on defendant's part but because of insufficient production, and that since it does so show, plaintiffs cannot complain that the defendant continued to hold on to the lease throughout its producing life instead of turning it back to plaintiffs before it had lapsed by its own terms.

This being so, the evidence will not support the verdict that the defend-

ant had violated any obligation or that plaintiffs had suffered damages as a result thereof. If, however, we could agree with plaintiffs' view that the critical provision is plain and must be construed literally as meaning the production of any oil whatever rather than oil in paying quantities, we should nevertheless conclude that the defendant did not breach its obligation. This is so because it is undisputed that the defendant did not abandon the lease when it shut the well down but only elected to abandon it in October when, a full thirty days prior to its proposed abandonment it gave notice of its intention so to do by sending the letter notice.

It being undisputed that the defendant before abandoning the lease, gave the required thirty days notice of its intention to abandon, plaintiffs find themselves on the horns of a dilemma which prevents a jury finding that defendant breached the obligation fixed by the notice clause. For if, at the time the defendant gave notice, the lease had ceased to produce and was therefore not producing oil or gas as provided in the clause, the lease had expired by its terms and defendant had not in any manner breached its obligation to plaintiffs. If on the other hand, the lease was producing some oil, defendant did not breach its contract because it gave the thirty days notice required before abandoning the lease.

██ We are unable to determine from the record whether the jury accepted the plaintiffs' view, with which, as we have made plain, we do not agree, that the act of the defendant, on March 31, in ceasing to produce the well for oil because it was not being produced in paying quantities, was an abandonment of the well, and it was effected without giving the prior thirty days notice, or whether it was upon the theory that the evidence showed that defendant did not produce the well as a prudent operator should. But this is not material for, if on the first ground, the verdict would be contrary to settled law, and, if on the sec-

ond ground, it would be without evidence to support it.

On defendant's appeal, the judgment is reversed and the cause is remanded with directions to enter judgment against the plaintiff and for the defendant.